## MATTER OF KUNG

### In Section 248 Proceedings

#### A-22870733

*Decided by Commissioner June 29, 1978*

(1) Applicant filed application for change of nonimmigrant status under section 248 of the Immigration and Nationality Act, 8 U.S.C. 1258, from that of nonimmigrant student to that of treaty investor under section 101(a)(15)(E)(ii) of the Act, 8 U.S.C. 1101(a)(15)(E)(ii). The application was denied on grounds that the applicant failed to establish his investment did not represent a small amount of capital in a marginal enterprise; failed to demonstrate an ability to control the enterprise; and was not in lawful nonimmigrant student status when the application for change of nonimmigrant status was filed.

(2) Where applicant as sole investor invested $53,000 in a restaurant and evidence showed he had available an additional $46,000 in reserve funds on which to draw, it cannot be said that he has invested in a marginal business solely to earn a living. Therefore, applicant is not precluded from qualifying for treaty investor status on that ground.

(3) Where applicant was limited by certain requirements in the franchise agreement under which he had purchased his restaurant, but those limiting requirements were overshadowed by non-limiting factors such as ability to purchase non-specified products and services on the open market, and ability to hire and fire employees, set wage scales and set the hours of business, applicant has the necessary latitude to control, direct, and develop the enterprise and is not precluded from qualifying for treaty investor status on this ground.

(4) Where the record did not contain sufficient information regarding the nature and scope of the applicant's involvement and participation in the business enterprise at the time he was a student, to determine whether or not applicant was actually employed without Service authorization, the record would be remanded in order to develop facts on this issue.

ON BEHALF OF APPLICANT:　George K. Rosenberg, Esquire
3600 Wilshire Boulevard
Suite 1902
Los Angeles, California 90100

This matter is before the Commissioner on certification as provided by 8 C.F.R. 103.4 for review of the Regional Commissioner's decision to dismiss the appeal from the District Director's decision to deny the application for change of nonimmigrant status.

The applicant is a 28-year-old native and citizen of China. He last entered the United States on September 11, 1974, as a nonimmigrant student, classification F-1. His authorized stay in this status has been extended to June 15, 1978. On September 8, 1976, the applicant purchased a franchised restaurant in Monrovia, California, for the sum of $53,000. On December 16, 1976, he filed an application to change his nonimmigrant status from student to that of a treaty investor (E-2) pursuant to section 248 of the Immigration and Nationality Act, 8 U.S.C. 1258.

An applicant for change of nonimmigrant classification under section 248 of the Act must establish that he has been lawfully admitted to the United States as a nonimmigrant and that he is continuing to maintain that status at the time of filing the application. In addition, the applicant must be eligible for the nonimmigrant status sought as described in section 101(a)(15) of the Act, 8 U.S.C. 1101(a)(15).

On October 3, 1977, the District Director denied the application for reasons which may be summarized as follows:

1. The applicant failed to establish that his investment did not represent a small amount of capital in a marginal enterprise and made solely for the purpose of earning a living.

2. The applicant failed to demonstrate an ability to control the enterprise, thereby not qualifying as an alien entitled to enter the United States in pursuance of a treaty of commerce and navigation coming to develop and direct an enterprise in which he had invested.

3. The applicant was statutorily ineligible in that he was not maintaining his nonimmigrant student status at the time the application was filed.

On March 20, 1978, the Regional Commissioner dismissed the appeal from the District Director's decision and affirmed that decision.

One reason cited by the District Director and upheld by the Regional Commissioner for denying the instant application is that the applicant had invested a small amount of capital in a marginal enterprise solely for the purpose of earning a living and therefore could not qualify as a treaty investor. An analogy was drawn between the instant case and *Matter of Lee*, 15 I&N Dec. 187 (BIA 1975) which held that where the investor could not prove that a reasonable return was forthcoming from the enterprise in which the investment had been made, it was a marginal enterprise entered into solely for the purpose of earning a living. A comparison of the two cases reveals few if any analogous relationships. In *Matter of Lee, supra*, the applicant was only one of three partners and had invested only $10,000 in a business worth six to nine times that amount. In the instant case evidence has been submitted that the applicant has invested $53,000 as a sole owner of the enterprise. In *Matter of Lee, supra*, no showing was made that the applicant had other funds or sources of income. In the instant case

261

evidence has been submitted that the applicant had $46,000 in reserve funds.

The term "small amount of capital in a marginal enterprise solely to earn a living" must be applied to a given situation in its entirety. In the instant case we have an investor who has invested $53,000 in what could only be a marginal enterprise since no evidence of the actual or contemplated return on the investment has been submitted. However, the applicant has produced evidence that he has an additional $46,000 on which he can draw. It can hardly be said that such a person has invested in a marginal business solely to earn a living. Therefore, I conclude the District Director and the Regional Commissioner erred in finding that the applicant was not qualified as a treaty investor on this ground.

Another issue is the degree of control the applicant has over his investment. Citing *Matter of Lee, supra,* the District Director concluded that the applicant had not demonstrated that he was able to control and develop the enterprise in which he had invested. His conclusions were, in part, based on the fact that the enterprise was a franchised restaurant and that the franchiser (Kentucky Fried Chicken, Inc.) imposed strict conditions on the franchisee (the applicant) that effectively reduced the degree of control over the operation of the restaurant to the point where the applicant could not direct and develop the enterprise. The Regional Commissioner sustained the allegation of the District Director.

I find no fault with the precept set forth in *Matter of Lee, supra,* in that an investor must show that he has the ability to control the investment, thereby fulfilling that part of the definition of treaty investor contained in section 101(a)(15)(E)(ii) of the Act. ("Solely to develop and direct the operation of the enterprise or of an enterprise in which he is actively in the process of investing.") However, the degree of ability to control the business or enterprise in *Matter of Lee, supra,* and the instant case are on two completely divergent planes. (*In Matter of Lee, supra,*) the principal had invested $10,000 in a three way partnership agreement which had an unproved net worth of $90,000. When questioned as to the degree of control he would be able to exercise and proof of the net worth of the enterprise, the price was revised downward to $64,000 and the principal stated he would, at a future date, invest additional funds to insure 51% ownership of the enterprise. No specific date for this was set nor was it shown that the principal had the funds available to make such an additional investment. In the instant case the applicant purchased an operating business for $53,000. He is the sole owner of the business and the question of control is confined in the franchise agreement under which the business was purchased.

The Regional Commissioner has set forth four conditions imposed by the franchise agreement which he concludes shows "that the inherent nature of the franchise agreement prohibits the degree of control necessary to qualify the applicant as a treaty investor." The four conditions are:

1. 3.5 percent of the gross sales must be expanded in advertising.
2. The franchisee must use only the batter mix provided by the franchiser.
3. The franchisee may sell only those products approved by the franchiser.
4. The franchiser may terminate for default of the agreement and thereafter has the option of purchasing the business.

In the interest of fairness, it would seem that in order to apply these factors in an adverse ruling, we must consider the other side of the coin and discuss the factors which enhance or make possible a showing that the applicant does have the ability to control the business.

The 3.5 percent of gross sales that is mandated for advertising is for *local* advertising. Therefore, the franchisee receives the full benefit of this advertising. There is no other condition set on the manner in which the franchisee must conduct this advertising. Thus it may be assumed that he controls this facet of directing and developing the business.

The franchisee may only use the "batter mix" provided by the franchiser. However, the agreement sets forth that the franchisee may purchase on the open market all other services, supplies, products, fixtures, or any other goods. By open market shopping he can exercise control by purchasing products at reduced rate or by volume buying. Quality may be maintained by selective buying.

The franchisee may sell only those products approved by the franchiser. This clause (#10 in the franchise agreement) goes on to state that the franchisee is not restricted in any way regarding the retail pricing of such products. Here we see that the franchisee can control and set his profit margin. In addition, there appears to be no restriction on the franchisee to submit a new or different product which he wishes to sell for approval to the franchiser.

The franchiser may terminate for default of the agreement and thereafter has the option of purchasing the business. Here we find that there is a 15 day grace period. This gives the franchisee time to correct any infringement and thereby protect his investment. The matter of "option to repurchase" by the franchiser is vague as to its implications. Since the franchise itself appears to be transferable through sale to a third party as evidenced through the instant purchase by the applicant, it would appear that the franchiser has the right of first refusal only.

When viewed in the above light, it becomes readily apparent that the limiting factors imposed by the franchisee to direct, develop, and

protect his investment are overshadowed by the nonlimiting factors. There are additional favorable factors, such as, but not limited to hiring and firing of employees, setting wage scales, and setting the hours of business. Therefore, I conclude that the applicant has control of his enterprise and thus can direct and develop the enterprise.

The question of whether the applicant violated his nonimmigrant status during the period from September 8, 1976 (when he purchased the business) and December 16, 1976 (the date on which the application for change of nonimmigrant status was filed) is paramount. If there was a violation of nonimmigrant status as determined by the District Director, a determination sustained on appeal by the Regional Commissioner, then the applicant is rendered statutorily ineligible for a change of nonimmigrant status under the provisions of section 248 of the Act. However, if there was no violation of nonimmigrant status during the aforementioned period (September 8 through December 16, 1976), then the applicant would not have been statutorily barred from the benefits requested.

The District Director, without citing a specific instance, found that "the record reflects that as early as September 8, 1976, you were employed at the site of your investment as owner and operator." We can only surmise that this finding was based on the applicant's answer to item 18 of the instant application, where he indicated that he had been employed and listed his occupation as owner and operator of a restaurant. The District Director further found that the record was void of any evidence that the applicant had been authorized by this Service to engage in employment while in student status. From these conclusions the District Director determined that the applicant had violated his nonimmigrant student status and was, therefore, statutorily ineligible for the benefit sought.

Counsel for the applicant, in his brief supporting the appeal to the Regional Commissioner, attacked the finding of the District Director that the applicant had violated his nonimmigrant status on the ground that it was only reasonable to assume that a person investing a substantial amount of capital in an enterprise would immediately become involved with the direction and development of that enterprise. Counsel argued that his client, in the instant case, was locked into a "Catch 22" situation. The applicant was not eligible for the status of treaty investor unless he was directing and developing an enterprise in which he had invested but if he did so, he would be in violation of his nonimmigrant student status and therefore statutorily ineligible to apply for a change of nonimmigrant status.

The Regional Commissioner dismissed the "Catch 22" situation and went on to specifically cite item 18 of the instant application as barring relief under the statute. He relied on the definition contained in Black's

Law Dictionary to sustain the District Director's contention that "owning and operating" a business constituted employment. He ruled that since the Service had not authorized the applicant to be employed while a nonimmigrant student, the applicant had violated the status by accepting unauthorized employment during the period of September 8, 1976, to December 16, 1976.

We shall not comment at this time on the Counsel's "Catch 22" charge. We simply do not have sufficient information regarding the nature and scope of the applicant's involvement and participation in the operation of the business enterprise to make a decision on whether the applicant was employed during the critical period. Details should also be developed regarding number of hours spent by the applicant at the business, the tasks performed by him, and number of employees engaged at the enterprise and the hours and tasks performed by them. The case will therefore be remanded so that further evidence may be adduced on this issue.

ORDER: The case is remanded to the District Director for reopening and reconsideration.