MARKAIR, INC., Petitioner,

v.

CIVIL AERONAUTICS BOARD,
Respondent,

Transamerica Airlines, Inc., Intervenor.

CA No. 83–7875.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 21, 1984.

Decided Oct. 12, 1984.

---

James T. Lloyd, Hydeman, Mason, Burzio & Lloyd, Washington, D.C., for petitioner.

Barry Molar, C.A.B. Associate Gen. Counsel, Washington, D.C., for respondent.

Before CHAMBERS, FERGUSON and BEEZER, Circuit Judges.

BEEZER, Circuit Judge:

This is a petition for review of an order of the Civil Aeronautics Board that granted certificates of public convenience and necessity to five airlines, allowing them to provide charter service in Alaska. The CAB contends that its order was authorized under the Airline Deregulation Act of 1978, despite specific statutory language restricting the availability of such certificates for service in Alaska. We reverse.

I

FACTS AND PROCEEDINGS BELOW

On July 1, 1972, Transamerica Airlines, Inc. filed an application with the CAB to amend its certificate of public convenience and necessity to remove the condition that prohibited it from conducting charter operations in Alaska. On December 13, 1982, the CAB served an order to show cause in which it proposed to grant Transamerica the requested authority and indicated that it would also grant the applications of all fit carriers who applied for such authority. The CAB accordingly invited other carriers to apply for Alaska charter authority. Six additional carriers applied. MarkAir, Inc. objected to each application and to the CAB's show cause order.

On November 15, 1983, the CAB promulgated its final order, in which it issued certificates to five of the seven applicants. The CAB additionally concluded that a policy of multiple permissive entry in the Alaska charter market was mandated by the Act's overall emphasis on competition. In order to enable the carriers to use their new authority, the CAB exempted them

from regulations prohibiting any certificated carrier, except for certain Alaska carriers, from performing charter operations in Alaska. MarkAir filed a timely petition for review. Transamerica intervened on behalf of the CAB.

## II

## DISCUSSION

### A. *Statutory History*

It is unlawful for an air carrier to engage in any air transportation without a certificate of public convenience and necessity. 49 U.S.C. § 1371(a). Prior to the passage of the Airline Deregulation Act of 1978, the CAB could issue such a certificate only if it found that the applicant's service was "required by" the public convenience and necessity. 49 U.S.C. § 1371(d)(1) (1976). In 1978, Congress adopted a "gradual and phased transition to a deregulated system." H.R.Conf.Rep. No. 95–1779, 95th Cong., 2d Sess. 56 (1978), U.S.Code Cong. & Admin.News 1978, pp. 3737, 3773, 3775. The Act provided, *inter alia,* that the CAB must issue a certificate if the transportation covered by the application is "consistent with" the public convenience and necessity. 49 U.S.C. § 1371(d)(1). The Act adopted a statutory presumption that the granting of a certificate is consistent with the public convenience and necessity and placed the burden of proving otherwise on any opponent of the application. 49 U.S.C. § 1371(d)(9)(B)–(C).

The Act, however, provided an express exception for charter air transportation in Alaska:

Notwithstanding any other provision of this title, no certificate issued under this section shall authorize the holder thereof to provide charter air transportation between two points within the State of Alaska unless, and then only to the extent which, the [CAB], in issuing or amending such certificate, may authorize after determining that such charter air transportation is *required by* the public convenience and necessity.

49 U.S.C. § 1371(n)(3) (emphasis added). In considering MarkAir's petition, we are called upon to interpret this provision.

### B. *The Standard of Review*

This court's review of an agency decision is limited to determining whether the agency substantially complied with statutory and regulatory procedures, whether substantial evidence supported its factual determinations, and whether its action was arbitrary, capricious, or an abuse of discretion. *Toohey v. Nitze,* 429 F.2d 1332, 1334 (9th Cir.1970), *cert. denied,* 400 U.S. 1022 (1971). The interpretation of a statute by the agency charged with administering it is entitled to deference. *NLRB v. Bell Aerospace Co.,* 416 U.S. 267, 274–75, 94 S.Ct. 1757, 1761–1762, 40 L.Ed.2d 134 (1974); *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). The courts, however, are the final authorities on issues of statutory construction. *Federal Election Commission v. Democratic Senatorial Campaign Committee,* 454 U.S. 27, 32, 102 S.Ct. 38, 42, 70 L.Ed.2d 23 (1981). We must reject administrative constructions of a statute that are inconsistent with the statutory mandate or that frustrate the policy that Congress sought to implement. *Id.*

### C. *The Statutory Standards*

In the order under review, the CAB determined that the public convenience and necessity required a multiple permissive entry policy for charter transportation in Alaska. MarkAir contends that the CAB failed to observe the proper statutory standards in making that determination. The CAB defends its order on three grounds.

First, the CAB contends that its order is justified by the overall procompetitive policy of the Act. *See* 49 U.S.C. § 1302(a)(4). The CAB thus ignores the well-settled rule of statutory construction that the specific terms of a statute override the general terms. *Monte Vista Lodge v. Guardian Life Insurance Co.,* 384 F.2d 126, 129 (9th Cir.1967), *cert. denied,* 390 U.S. 950, 88 S.Ct. 1041, 19 L.Ed.2d 1142

(1968); 2A C. Sands, *Statutes and Statutory Construction* § 47.11 (4th ed. 1973). Because the provision regarding Alaskan air carriers is specific, while the provisions mandating a procompetitive policy are general, the CAB's interpretation is unsound.

Moreover, the CAB ignores the legislative history of the Act. The Senate Committee Report expressed an unambiguous intent to maintain a protectionist policy for Alaska charter air service:

A principal purpose of this [protectionist] policy has been to afford protection to Federally certificated Alaskan carriers, particularly those conducting subsidized operations.

Hearings in Alaska have convinced the Committee of the need to insure the perpetuation of that policy to protect both subsidized carrier operations as well as the extensive charter operations now conducted in Alaska by Alaskan carriers not presently certificated by the [CAB]. Given the harsh climatic and high cost Alaskan operating environment as well as the marked cyclical nature of such services, the Committee believes a change in present policy would jeopardize the continued charter operations on a year round basis, which the Alaskan carriers have consistently provided.

The proposed legislation insures that the [CAB] would authorize non-Alaska carriers to conduct charter services between points in Alaska only to the extent that such entry is clearly established as being required by the public convenience and necessity. In making such determinations, the Committee expects the [CAB] to carefully weigh the availability of services being provided by existing Alaskan scheduled and charter operators, including those not certificated by the [CAB], as well as the impact that any such authorization might have in impairing the capability of such carriers to maintain or expand their level of Alaskan operations or in causing them economic injury.

S.Rep. No. 95–631, 95th Cong., 2d Sess. 95–96 (1978). Thus, the overall procompetitive policy of the Act does not support the CAB's order.

Second, the CAB contends that the protectionist exception for Alaskan charter air transportation is no longer required. Regardless of the validity of that position, it is not the role of the CAB to make policy judgments in the face of a contrary congressional determination. *See Federal Election Commission,* 454 U.S. at 32, 102 S.Ct. at 42. The proper course for the CAB is to petition Congress to amend the Act, rather than to bypass the statute.

Third, the CAB notes that it issued several orders prior to the passage of the Act which stated that a multiple permissive entry policy was required by the public convenience and necessity. *E.g., Las Vegas-Dallas/Ft. Worth Nonstop Service Investigation,* 77 C.A.B. 482, 493 (1978). Thus, the CAB contends that Congress tacitly ratified its interpretation of the "required by" language when it passed the Act. We find this argument unpersuasive. None of the pre-Act orders applied to Alaska. In fact, none of the orders were implemented until after the Act took effect. Moreover, any possibility of a tacit ratification is eliminated by the Senate Committee Report, which shows an intent to maintain a protectionist policy. Thus, we conclude that the CAB failed to observe the correct statutory standard.

### D. *The CAB's Findings*

Even though the CAB misconstrued the statute, it would be possible to uphold the order if the CAB's findings supported its order under the correct standard. The CAB's findings, however, ignore the factors to be considered under the statute. The CAB merely stated that "this kind of proof is not required by our rules. Moreover, it is unnecessary in light of our finding that competition requires certification of all fit applicants." *Alaska Interstate Charter Entry Proceeding,* Order 83–11–5, at 10 (Nov. 1, 1983). Thus, we find that the CAB's findings were inadequate. *See Toohey,* 419 F.2d at 1334.

III

## CONCLUSION

The order of the Civil Aeronautics Board is REVERSED and REMANDED.