**Abolfazl SALEHPOUR,**
**Plaintiff-Appellant,**

v.

**IMMIGRATION AND NATURALIZA-**
**TION SERVICE,**
**Defendant-Appellee.**

No. 84–6202.

United States Court of Appeals,
Ninth Circuit.

Submitted May 9, 1985.*

Decided May 31, 1985.

---

* This panel is unanimously of the opinion that oral argument was not required. Fed.R.App.P. 34(a); 9th Cir.R. 3(a).

Otto Frank Swanson, Marina del Rey, Cal., for plaintiff-appellant.

Carolyn M. Reynolds, Asst. U.S. Atty., Los Angeles, Cal., for defendant-appellee.

Before WRIGHT, ALARCON and NOR-RIS, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge.

Salehpour appeals an order of summary judgment upholding the Immigration and Naturalization Service's decision that he is statutorily ineligible to adjust status pursuant to 8 U.S.C. § 1255.[1] The issue is whether work performed by Salehpour prior to formal approval of his H–1 application renders him statutorily ineligible to adjust.

## FACTS AND PROCEEDINGS BELOW

The following chronology summarizes the events that led to this appeal:

9/25/78: INS granted Salehpour a change of status from visitor for pleasure (B–2) to nonimmigrant student (F–1) and granted an extension of temporary stay until October 30, 1979, with authorization to attend Carnegie-Mellon University.

10/23/79: INS granted him an extension of stay for the duration of his status as an F–1 student at Carnegie-Mellon University.

12/30/81: INS authorized Salehpour for practical training employment in connection with his student status until June 30, 1982.

4/29/82: Salehpour's training employer, Heat Transfer Research, Inc., filed a petition to classify him as a temporary worker (H–1) and an application to change his nonimmigrant status (F–1 to H–1) pursuant to 8 U.S.C. § 1258. These documents indicated that Salehpour was to commence employment May 1, 1982.

8/12/82: INS granted the petition and application for a change of classification and granted an extension of Salehpour's temporary stay until June 30, 1983.

3/2/83: Salehpour filed an application to adjust his status to permanent resident pursuant to 8 U.S.C. § 1255.

6/7/83: District director denied Salehpour's application for status as a permanent residence based on statutory ineligibility. The district director reasoned that he had no discretion to adjust status for an alien who had engaged in unauthorized employment and that Salehpour's employment from July 1, 1982 to August 12, 1982 was unauthorized.

Salehpour filed a complaint for declaratory relief and judicial review of the INS decision. The district court granted the INS motion for summary judgment, finding that Salehpour was statutorily ineligible to adjust status pursuant to 8 U.S.C. § 1255(c).

## DISCUSSION

### I. *Standard of Review*

■ The standard of review of an INS determination that an applicant is statutorily ineligible to adjust status is unclear in this circuit. In *Lee v. INS*, we reviewed using the substantial evidence test. 541 F.2d 1383, 1384–86 (9th Cir.1976) (Service's factual determination was not supported by any evidence in the record and it misread its regulation).

---

1. 8 U.S.C. § 1255 provides in relevant part:

(a) The status of an alien who was inspected and admitted or paroled into the United States may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

. . . .

(c) The provisions of this section shall not be applicable to (1) an alien crewman; (2) an alien (other than an immediate relative as defined in section 1151(b) of this title or a special immigrant described in section 1101(a)(27)(H) of this title) who hereafter continues in or accepts unauthorized employment prior to filing an application for adjustment of status; or (3) any alien admitted in transit without visa under section 1182(d)(4)(C) of this title. 8 U.S.C. § 1255 (1982).

Later, we held that where facts are undisputed and an applicant is held ineligible as a matter of law, the Board's decision is subject to review for errors of law. *Yui Sing Tse v. INS*, 596 F.2d 831, 834 (9th Cir.1979); *accord Ka Fung Chan v. INS*, 634 F.2d 248, 252 (5th Cir.1981).

Because there is no factual dispute in this case and the district court held that the INS was entitled to judgment as a matter of law, we review the Service's decision de novo. *See United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied,* —— U.S. ——, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

The outcome here depends on the INS interpretation of "unauthorized employment." Review of an agency's interpretation of a statute is governed by the Administrative Procedure Act (APA), 5 U.S.C. § 706, which requires that an agency's action be set aside only if "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (1982).

■ We give deference to an administrative agency's interpretation of a statute it is charged with administering. *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 274–75, 94 S.Ct. 1757, 1761–62, 40 L.Ed.2d 134 (1974); *Markair, Inc. v. Civil Aeronautics Bd.*, 744 F.2d 1383, 1385 (9th Cir.1984). If the agency's interpretation is reasonable, we may not reject that interpretation merely because we prefer another view. *National Treasury Employees Union v. Federal Labor Relations Auth.*, 732 F.2d 703, 706 (9th Cir.1984). The courts, however, are the final authorities on statutory construction. *Markair, Inc.*, 744 F.2d at 1385.

■ Further, an agency's interpretation of its administrative regulations is controlling unless it is plainly erroneous or inconsistent with the regulations. *United States v. Larionoff*, 431 U.S. 864, 872, 97 S.Ct. 2150, 2155, 53 L.Ed.2d 48 (1977); *Ruangswang v. INS*, 591 F.2d 39, 43 (9th Cir.1978); *Pei-Chi Tien v. INS*, 638 F.2d 1324, 1327 (5th Cir.1981).

If the INS determination that employment pending approval of an H–1 application constitutes unauthorized employment is reasonable and not inconsistent with its own regulations, then its conclusion that Salehpour is statutorily ineligible to adjust is not arbitrary and capricious, *see Bureau of Alcohol, Tobacco and Firearms v. Federal Labor Relations Auth.*, 672 F.2d 732, 735 (9th Cir.1982), *rev'd on other grounds*, 464 U.S. 89, 104 S.Ct. 439, 78 L.Ed.2d 195 (1983), and must be affirmed.

We hold that the agency's conclusion is not reasonable, is inconsistent with its own regulations and, therefore, is arbitrary and capricious.

## II. *Unauthorized Employment*

If an alien applicant is not statutorily ineligible, *Pei-Chi Tien v. INS*, 638 F.2d at 1326, and complies with the entry requirements, the attorney general has discretion to adjust the alien's status to that of a permanent resident. 8 U.S.C. § 1255(a) (1982). Section 1255(c) includes as ineligible "an alien ... who hereafter continues in or accepts unauthorized employment prior to filing an application for adjustment of status."

Salehpour asserts that work performed by an alien after having filed a prima facie approvable petition and application for H–1 status pursuant to 8 U.S.C. § 1258, but prior to formal approval, is not unauthorized employment within the meaning of 8 U.S.C. § 1255(c) where the petition and application are subsequently approved. *See* 2 Gordon & Rosenfield, *Immigration Law & Procedure* § 7.7(b) at 7–87 (1985). He argues that his interpretation is consistent with prior INS interpretations of "unauthorized employment." *See id.* n. 38j.1; *Matter of Tan*, No. A22 489 635, (BIA, June 14, 1980) (continued employment pending approval of an application pursuant to 8 U.S.C. § 1258 not unauthorized within the meaning of 8 U.S.C. § 1255); *In re Shoh*, No. A22 497 259 (R.C. Eastern Regional Office, Sept. 21, 1979) (same; reasoning that time taken by the INS to adjudicate an application is beyond the control of the

applicant); *Chaudhury v. INS,* No. A21 156 909 (R.C. Southern Region, Aug. 3, 1977) (same).[2]

According to the INS, permission to work arose only when it approved the application for adjustment, not on the date for commencement of employment listed on the application. It asserts that its policy dictates that work performed by an H–1 applicant prior to formal approval of an application for change of classification is unauthorized employment, citing a letter from the Associate Commissioner for Examinations and a telex from the central office, both issued in 1982.

The INS relies also on two cases to support its conclusion that Salehpour is statutorily ineligible to adjust: *Oki v. INS,* 598 F.2d 1160 (9th Cir.1979) and *Aiyadurai v. INS,* 683 F.2d 1195 (8th Cir.1982). *Oki* and *Aiyadurai* are inapposite to this case. Neither involved applications for H–1 classifications. *Oki* involved an alien who engaged in employment *prior to* applying for permission to work. 598 F.2d at 1161. The employment was clearly unauthorized

because there was no pending application for permission. The application for labor certification in *Aiyadurai* was denied. 683 F.2d at 1197.

Finally, the INS maintains that 8 U.S.C. § 1258,[3] change of nonimmigrant classification, is irrelevant to this case. It argues that whether employment performed pending approval of an H–1 application is unauthorized involves agency policy and is not a matter committed to the discretion of the District Director.

The assertion that 8 U.S.C. § 1258 is irrelevant to this case is incorrect. It is through the procedure of applying for and being granted H–1 classification that Salehpour obtained employment authorization. If Salehpour's employment from July 1, 1982 to August 12, 1982 is considered authorized under 8 U.S.C. § 1258, then his employment should not be considered unauthorized for purposes of adjustment of status under 8 U.S.C. § 1255.

The INS also asserts that 8 C.F.R. § 248.1,[4] which interprets 8 U.S.C. § 1258,

---

2. Other INS decisions support Salehpour's argument. *See In re Lett,* 17 I & N Dec. 312, 313 (BIA 1980) (where investor exemption application is approved, management work prior to approval not unauthorized employment); *Lee v. Ferro,* No. 83–553T (W.D.N.Y. Oct. 5, 1983) noted in 60 Int.Rel. No. 42 at 829–30 (delay caused by filing wrong form does not result in unauthorized employment because of good faith effort to comply with INS directives; to deny application would be to place form over substance); *see also* Memorandum of the Commissioner, Northern Region, noted in 58 Int.Rel. No. 32 at 419–20 (continued employment pending approval of "H" petition is not unauthorized under 8 U.S.C. § 1255).

3. Section 1258 provides in relevant part:
   The Attorney General may, under such conditions as he may prescribe, authorize a change from any nonimmigrant classification to any other nonimmigrant classification in the case of any alien lawfully admitted to the United States as a nonimmigrant who is continuing to maintain that status, ...
   8 U.S.C. § 1258 (1982).
   The regulations interpreting section 1258 are found at 8 C.F.R. § 248 (1985).

4. 8 C.F.R. § 248.1 provides in relevant part:
   (a) **General.** Except for those classes enumerated in § 248.2, any alien lawfully admitted to the United States as a nonimmigrant,

including an alien who acquired such status pursuant to section 247 of the Act, who is continuing to maintain his nonimmigrant status, may apply to have his nonimmigrant classification changed to any nonimmigrant classification other than that of a fiancee or fiance under section 101(a)(15)(K) of the Act.
   (b) **Maintenance of status.** In determining whether an applicant has continued to maintain nonimmigrant status, the district director shall consider whether the alien has remained in the United States for a longer period than that authorized by the Service. The district director shall consider any conduct by the applicant relating to the maintenance of the status from which the applicant is seeking a change. An applicant may not be considered as having maintained nonimmigrant status within the meaning of this section if the applicant failed to submit an application for change of nonimmigrant classification before the applicant's authorized temporary stay in the United States expired, unless the disitrict director determines that—
   (1) The failure to file a timely application is excusable;
   (2) The alien has not otherwise violated the nonimmigrant status;
   (3) The alien is a bona fide nonimmigrant; and
   (4) The alien is not the subject of deportation proceedings under Part 242 of this chapter.

does not allow the District Director to excuse any failure to maintain status other than overstay. 8 C.F.R. § 248.1(a) provides that an alien who is continuing to maintain his nonimmigrant status may apply to have his nonimmigrant classification changed. Section 248.1(b) provides that the District Director "shall consider any conduct by the applicant relating to [his] maintenance of ... status."

The plain language of the regulation gives the District Director authority to determine whether an alien has maintained status to qualify for change of nonimmigrant classification. In addition, the regulation clearly allows the District Director to consider *any conduct* by the applicant relating to maintenance of status, including unauthorized employment. *Cf. Matter of Kung*, 17 I & N Dec. 260, 264 (BIA 1978) (unauthorized employment is a bar to 8 U.S.C. § 1258 change of nonimmigrant classification).

Further, the regulations provide that an applicant may not be considered as having maintained status if he did not submit his *application* for change "before his authorized temporary stay in the United States expired ...." 8 C.F.R. § 248.1(b); *cf. Samimi v. INS*, 714 F.2d 992, 994 (9th Cir.1983) (failing to file an application for an extension prior to the expiration of authorized stay is a violation of status sufficient to predicate deportation). The plain regulatory language allows an applicant to file

for change of classification up to the last day of his prior authorized stay.

■ Salehpour has complied with the language of this regulation. Where the objective criteria of a regulation are clearly met, there is no room for an agency to interpret a regulation so as to add another requirement. *Ruangswang v. INS*, 591 F.2d at 43–44. By its decision, the Service requires an applicant to do more than what is stated in the regulations.[5]

■ The INS interpretation of the regulations does not comport with their plain language. *Cf. Markair, Inc. v. Civil Aeronautics Bd.*, 744 F.2d at 1385–86 (policy justification for agency interpretation of a statute cannot ignore well-settled rules of statutory construction). We accord the agency's asserted interpretation less deference than usual because it arises from two 1982 internal communications, which are contrary to prior INS decisions. *See Pei-Chi Tien v. INS*, 638 F.2d at 1327 (Board erred as a matter of law because its decision was contrary to prior Board decisions and the clear language of the applicable regulations). We hold that the INS decision in this case is plainly erroneous and inconsistent with its regulations.[6]

■ Salehpour argues also that his employment was implicitly authorized by the INS. Because his application stated that employment would begin on May 1, 1982,

8 C.F.R. § 248.1 (1985).
The regulations in effect at the time of this controversy contain somewhat different language, but the April 5, 1983 amendment does not change the result in this case. The 1971 version of the regulations expressly gave the district director discretion to excuse failure to file a timely aplication. 8 C.F.R. § 248.1 (1983). However, this case does not involve filing a late application; the language of the regulation involved here is materially the same.

5. The INS cites another regulation that provides that unauthorized employment by a nonimmigrant constitutes a failure to maintain status. 8 C.F.R. § 214.1(e) (1985). The regulation states that a nonimmigrant may not engage in employment *"unless* he has been accorded a nonimmigrant classification which authorizes employ-

ment or he has been granted permission to engage in employment in accordance with the provisions of this chapter." *Id.* (emphasis added). Notwithstanding that this regulation applies to deportation (8 C.F.R. § 241), its language does not compel a finding of unauthorized employment in this case. Salehpour obtained authorization for employment. The regulation does not state that a nonimmigrant may not engage in employment *until* authorization is granted.

6. By so holding we do not reach the merits of Salehpour's argument that the INS is required to follow the notice and comment provision of the APA in order to change Service precedent and policy.

the INS approved the application in full awareness that he was employed. A change of nonimmigrant status may be authorized only to an alien who is continuing to maintain status. 8 C.F.R. § 1258. Because INS policy is that unauthorized employment is a bar to change of nonimmigration status, *Matter of Kung*, 17 I & N Dec. at 264, it must have implicitly authorized Salehpour's employment from July 1 to August 12, 1982, when it granted him H–1 status. *See Matter of Tan* (BIA).

In *Matter of Tan*, the alien applied for a "one year" extension of employment authorization to complete training. The termination date given on the approval was one year from the expiration of his prior authorized stay. The alien argued that had his employment prior to formal approval been unauthorized, the extension should have been granted to one year from the approval date. The INS ruled that the alien's employment was authorized based on its application and approval forms.

The factual situation here is similar to that in *Tan*. The INS granted Salehpour's H–1 visa with a termination date one year from the termination date of his practical training authorization.[7] We find that it implicitly authorized Salehpour's employment.[8]

The district court's grant of summary judgment is reversed and the case remanded to the district director to determine in his discretion whether Salehpour should be granted adjustment of status pursuant to 8 U.S.C. § 1255.

REVERSED.

---

**7.** Although Salehpour applied for a two-year visa beginning on the date of his employment, the Service generally does not grant visas for longer than a one year period. 1 Gordon & Rosenfield, *Immigration Law & Procedure* § 2.14(c) (1985).

**8.** Salehpour also argues that congressional intent does not support the Service's interpretation of "unauthorized employment." The bar of "unauthorized employment" was intended to prevent aliens from filling jobs for which there are citizens or authorized alien aspirants, citing

*Bhakta v. INS,* 667 F.2d 771, 772–73 (9th Cir. 1981) (alien not authorized as a business investor under INS regulations yet employment not held unauthorized by analogy to the reasons for the business investor exception). He asserts that a requirement that the employer and alien wait for prior Service approval would frustrate the intent of Congress. *See* 2 Gordon & Rosenfield, *Immigration Law & Procedure* ¶ 7.7(b) at 7–87 (1985). While interesting, this argument was not fully addressed by the parties and it is not necessary for us to reach it.