**STATE OF ALASKA, Plaintiff-Appellee,**

v.

**Richard E. LYNG,[*] Secretary of Agriculture, R. Max Peterson, Chief, United States Forest Service, and Michael A. Barton, Alaska Regional Forester, and their respective successors in office, Defendants-Appellants.**

**No. 85-3992.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 3, 1986.

Decided Aug. 20, 1986.

[*] Successor to John R. Block, Fed.R.App.P. 43(c).

Michele Brown, Atty. General's Office, Anchorage, Alaska, for plaintiff-appellee.

William B. Lazarus, David C. Shilton, Land and Natural Resources Div., U.S. Dept. of Justice, Washington, D.C., Bruce M. Landon, Land and Natural Resources Div. Dept. of Justice, Anchorage, Alaska, for defendants-appellants.

Before WRIGHT, SNEED and SCHROE-DER, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

In this case we are asked to decide the reasonableness of the Forest Service's interpretation of the Alaska Statehood Act. The Service requires that land grant selections from national forests have a community nexus before they will be approved. The district court held that the Service's interpretation was unreasonable and granted summary judgment for Alaska. We reverse.

## FACTS AND PROCEEDINGS BELOW

Prior to statehood, the vast majority of land in Alaska was owned by the federal government. To facilitate economic development and community expansion, Con-

gress made several land grants to the state in the Alaska Statehood Act. Under Section 6(a) of the Alaska Statehood Act, the state may select up to 400,000 acres of land from the national forests, "with the approval of the Secretary of Agriculture."[1]

In December 1977, Alaska filed selections totaling 247,597 acres in the Chugach and Tongass National Forests. In a series of decisions in 1979, the Regional Forester disapproved 51,050 acres of those selections after determining they did not qualify under the conditions of the statute.

The decision of the Regional Forester was affirmed by the Chief of the Forest Service in October 1979. After the Secretary of Agriculture declined review, Alaska filed this action in federal district court. The court granted Alaska's motion for summary judgment, holding the Secretary's interpretation of the statute was contrary to law. The Secretary has appealed.

STANDARD OF REVIEW

We review *de novo* a grant of summary judgment. *Planet Insurance Co. v. Mead Reinsurance Corp.*, 789 F.2d 668 (9th Cir. 1986). The construction of a statute is a question of law reviewable *de novo. United States v. Louisiana-Pacific Corp.*, 754 F.2d 1445, 1447 (9th Cir.1985).

The APA requires that a reviewing court hold unlawful and set aside agency action found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, 5 U.S.C. § 706(2)(A), and actions in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, *id.,* § 706(2)(C).

The interpretation of a statute by the agency charged with its administration is granted substantial deference. *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *Kidd v. United States Department of Interior, Bureau of Land Management,* 756 F.2d 1410, 1412 (9th Cir.1985). If the statute is silent or ambiguous with respect to the specific issue, the court may not substitute its own construction for a reasonable interpretation made by the agency. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984).

To affirm, we need not conclude that the agency's construction was the only one it could have adopted, or even the one the court would have reached. *Alcaraz v. Block,* 746 F.2d 593, 606 (9th Cir.1984). Deference requires affirmance of any interpretation within the range of reasonable meanings the words permit, comporting with the statute's clear purpose. *Id.*

The courts, however, are the final authorities on issues of statutory construction, *Volkswagenwerk Aktiengesellschaft v. Federal Maritime Commission,* 390 U.S. 261, 262, 88 S.Ct. 929, 930, 19 L.Ed.2d 1090 (1968); *Markair, Inc. v. Civil Aeronautics Board,* 744 F.2d 1383, 1385 (9th Cir.1984), especially where the construction requires consideration of broad concerns beyond the agency's expertise. *Grunfeder v. Heckler,* 748 F.2d 503, 505 (9th Cir.1984) (en banc).

A court must reject administrative constructions of a statute inconsistent with a statutory mandate or that frustrate the policy that Congress sought to implement. *Federal Election Commission v. Demo-*

---

1. Section 6(a) states in relevant part:
 For the purposes of furthering the development of and expansion of communities, the State of Alaska is hereby granted and shall be entitled to select, within thirty-five years after the date of the admission of the State of Alaska into the Union, from lands within national forests in Alaska which are vacant and unappropriated at the time of their selection not to exceed four hundred thousand acres of land, and from the other public lands of the United States in Alaska which are vacant, unappropriated, and unreserved at the time of their selection not to exceed another four hundred thousand acres of land, all of which shall be adjacent to established communities or suitable for prospective community centers and recreational areas. Such lands shall be selected by the State of Alaska with the approval of the Secretary of Agriculture as to national forest lands and with the approval of the Secretary of the interior as to other public lands ...

 Pub.L. No. 85–508, 72 Stat. 339, 48 U.S.C. prec. § 21.

*cratic Senatorial Campaign Committee,* 454 U.S. 27, 32, 102 S.Ct. 38, 42, 70 L.Ed.2d 23 (1981); *United States v. Louisiana-Pacific Corp.,* 754 F.2d at 1447.

■ Alaska argues that no deference is due the Forest Service here because the Alaska Statehood Act is not an act that it administers. It contends that the Act is a contract between two sovereigns creating rights in the state, and the Forest Service's approval is only a procedural function. This argument is without merit.

The Supreme Court has held that the "approval of the Secretary" power conferred under land grant statutes gives the Secretary the authority and the duty "to determine the lawfulness of the selections." *Wyoming v. United States,* 255 U.S. 489, 503–04, 41 S.Ct. 393, 397, 65 L.Ed. 742 (1920); *Payne v. New Mexico,* 255 U.S. 367, 371, 41 S.Ct. 333, 334, 65 L.Ed. 680 (1920). *Accord Andrus v. Utah,* 446 U.S. 500, 511, 100 S.Ct. 1803, 1809, 64 L.Ed.2d 458 (1980); *Lewis v. Hickel,* 427 F.2d 673, 676 (9th Cir.1970), *cert. denied,* 400 U.S. 992, 91 S.Ct. 456, 27 L.Ed.2d 440 (1971); *Ferry v. Udall,* 336 F.2d 706, 710, 713 (9th Cir.1964), *cert. denied,* 381 U.S. 904, 85 S.Ct. 1449, 14 L.Ed.2d 286 (1965).

The "action of the Secretary [is] required, not merely as supervisory of the action of the agent of the state, but for the protection of the United States against an improper appropriation of their lands." *Wisconsin Cent R. Co. v. Price County,* 133 U.S. 496, 512, 10 S.Ct. 341, 347, 33 L.Ed. 687 (1890). Alaska's sovereignty did not prevent it from consenting to administration of the land grants by the Secretary as a condition of receiving the grants.

Alaska also argues that deference is improper here because the standards used by the Forest Service have not been promulgated as regulations.[2] However, deference to an administrative interpretation of a statute is appropriate whether or not it has been embodied in a regulation. *Western Pioneer, Inc. v. United States,* 709 F.2d 1331, 1335 (9th Cir.1983).[3]

## ANALYSIS

### I. *Community Nexus*

#### A. *Introduction*

The Forest Service refused to approve several Section 6(a) selections submitted by Alaska as suitable for prospective recreational areas. It required such areas to be near (generally within 25 nautical miles of) existing communities, proposed by existing community governments or planning boards as community areas, or at or near an area where there had been an expressed intention of establishing new communities.

#### B. *Statutory Language*

■ Section 6(a) requires that all selections of land under this subsection "shall be adjacent to established communities or suitable for prospective community centers and recreational areas."[4] The Forest Service has interpreted "prospective community" in this clause to modify both "centers"

---

**2.** Contrary to the Forest Service's assertion, the Secretary of Agriculture has promulgated no regulations giving the standards to be met before selections are approved. The regulation cited by the Forest Service, 43 C.F.R. § 627, was promulgated by the Secretary of the *Interior* and establishes only the administrative procedure for filing land selections.

**3.** Alaska has not challenged the Forest Service's failure to comply with the notice and hearing requirements of the A.P.A. These requirements generally do not apply to matters relating to public property or grants. 5 U.S.C. § 553(a)(2). However, the Department of Agriculture has decided voluntarily to impose these requirements on all agencies of the Department when making rules relating to public property or

grants. 36 Fed.Reg. 13,804 (1971); *Alcaraz,* 746 F.2d at 611. Because the district court has not considered this issue, we will not do so. *See United States v. Kupau,* 781 F.2d 740, 742 (9th Cir.1986).

**4.** The parties have argued whether the word "and" in this phrase is conjunctive or disjunctive. This is not determinative, as "community" could modify "recreational areas" under either reading. Furthermore, this phrase makes sense only if "and" is read disjunctively. Otherwise, any lands granted under the "suitable for" phrase would have to be suitable *both* for prospective community centers *and,* at the same time, for prospective recreational areas. Even the Forest Service does not insist on such an interpretation.

and "recreational areas." Alaska, on the other hand, would not read "prospective community" to modify "recreational areas."

In construing a statute, we look first to the language of the statute itself, and second to its legislative history and, as an aid in interpreting Congress' intent, the interpretation of its administering agency. *Brock v. Writers Guild of America, West, Inc.*, 762 F.2d 1349, 1353 (9th Cir.1985). We look to the legislative history if the statutory language is unclear. *Blum v. Stenson*, 465 U.S. 886, 896, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984). However, even where the meaning of the words is plain, the circumstances of the enactment of legislation may persuade us that Congress did not intend words of common meaning to have their literal effect. *Heppner v. Alyeska Pipeline Service Co.*, 665 F.2d 868, 870 (9th Cir.1981).

Here, the phrase in question is susceptible to either asserted interpretation and is ambiguous. We look to Congress' intent to shed light on its meaning.

Section 6(a) states its purpose. The land grants under this section are "[f]or the purpose of furthering the development of and expansion of communities." This purpose supports the Forest Service's "commuity nexus" interpretation.

The relationship between the land grants in Section 6(a) and Section 6(b) also supports the Forest Service's interpretation. Section 6(a) provides for two 400,000 acre grants, one from National Forests and one from other public lands. Section 6(b) provides for a grant of 102.5 million acres from public lands.[5] If no community nexus were required, Section 6(a) public land grants would be almost as unrestricted as Section 6(b) grants, since virtually any site may be classified as suitable for a prospective recreational area. The grant of public

lands in Section 6(a) would in substance be rendered surplusage, as Congress could have simply provided for a larger Section 6(b) grant. We must read the statute as a whole to avoid such a result. *See Richards v. United States*, 369 U.S. 1, 11, 82 S.Ct. 585, 591, 7 L.Ed.2d 492 (1962); *United States v. Menasche*, 348 U.S. 528, 538–39, 75 S.Ct. 513, 519–20, 99 L.Ed. 615 (1955).

### C. *Legislative History*

 Purposes of the Alaska Statehood Act included developing Alaska's economy, H.R.Rep. No. 624, 85th Cong., 1st Sess. 1, 9, *reprinted in* U.S.Code Cong. & Ad.News 2933, 2933, 2941 (1957) and resources, *id.* at 2936, and decreasing the amount of federally owned land in Alaska. *Id.* at 5, 7, U.S.Code Cong. & Ad.News at 2937, 2939. *See also* S.Rep. No. 1163, 85th Cong., 1st Sess. 1 (1957). However, these purposes are much more general than the specific purpose statement in Section 6(a). The specific purpose of Section 6(a) overrides the general purposes of the Act. *See Markair*, 744 F.2d at 1385.

The House Report specifies that Section 6(a) grants are to be "adjacent to established communities or suitable for prospective community or recreational areas." H.R.Rep. No. 624, 85th Cong., 1st Sess. 6, *reprinted in* U.S.Code Cong. & Ad.News 2933, 2938 (1957). This suggests that a "recreational area" need not be a "community recreational area." The Senate Report specifies that this land is "for community expansion and recreational sites." S.Rep. No. 1163, 85th Cong., 1st Sess. 2 (1957). Like the phrase in Section 6(a), this is ambiguous. However, the Senate Report also specifies that Section 6(a) grants will create "[s]tate ownership of valuable, accessible timberlands and other lands" which in turn "is intended to encourage the development and expansion of communities and recreational areas." *Id.* at 16. This tends to

---

**5.** Section 6(b) reads in relevant part:

The State of Alaska, in addition to any other grants made in this section, is hereby granted and shall be entitled to select, within thirty-five years after the admission of Alaska into the Union, not to exceed one hundred and two million five hundred and fifty thousand acres from the public lands of the United States in Alaska which are vacant, unappropriated, and unreserved at the time of their selection...

support Alaska's contention that "recreational areas" is not modified by "community."

The Forest Service relies heavily upon the legislative history of an Alaska statehood bill considered by Congress in 1954. This bill had language identical to that under consideration here. Such prior legislative history can be relevant to an understanding of the act. *See United States v. Enmons*, 410 U.S. 396, 404 n. 14, 93 S.Ct. 1007, 1012 n. 14, 35 L.Ed.2d 379 (1973). We need not decide what weight should be given this legislative history.

We find the 1957 legislative history ambiguous. In light of the community emphasis in the purpose clause and the relationship between Section 6(a) and Section 6(b), the Forest Service's interpretation is reasonable.

## II. *Adjacent*

■ Under Section 6(a), land selected must be "adjacent to established communities or suitable for prospective community centers and recreational areas." The Forest Service has interpreted "adjacent" broadly to mean "near to, but need not be adjoining, an established community." FSM 5455.22(4)(a)(2). It generally has approved recreation selections within 25 nautical miles from an existing community. This interpretation is reasonable.

The Service's requirement that land granted as suitable for prospective community recreational areas be within 25 miles of existing communities or lands "suitable for prospective community centers" is also reasonable. It gives similar tests for recreational areas near "established communities" and for those near areas "suitable for prospective community centers," making the clause internally consistent.

## III. *Suitable*

■ The Service interprets "suitable" to mean "there must be a reasonable expectancy that the site will be developed for

these purposes." FSM 5455.22(4)(a)(1). For a location to be suitable as a prospective community center, the Service requires an expressed intention of establishing a new community at or near the site. For a location to be suitable as a prospective recreational area, it requires that an existing community government or planning board propose the site for its community recreation plans or program, in addition to the requirement that the site be "near" the established community.

Alaska argues that this interpretation is unreasonable. From the plain meaning of the language, Alaska contends, Congress did not require these sites to be "expected" to develop into communities and recreational areas. It required only that the sites be "suitable for such uses." "Suitable" does not require an "expressed intention" that something be used for a particular use or purpose; it requires only that the thing be adaptable to such use or purpose.

We disagree. · Because the stated purpose of the grant is to further community development and expansion, it is not unreasonable to require the state to show some expectancy that the land will be used for those purposes. One factor going into a determination of suitability, from a land use planning standpoint, is the likelihood that people will move there. If this is not considered, almost any site could be found "suitable" for community purposes.[6]

## IV. *Arbitrary and Capricious*

Alaska argues that the Forest Service has applied its criteria in an arbitrary and capricious manner. This issue was presented to, but not decided by, the district court. We may consider an issue conceded or neglected below if the issue is purely one of law and the pertinent record has been fully developed. *In re Howell*, 731 F.2d 624, 627 (9th Cir.), *cert. denied*, 469 U.S. 933, 105 S.Ct. 330, 83 L.Ed.2d 266 (1984). The issue here involves the application of law to fact, and we decline to reach it.

---

**6.** Because we find the Forest Service's interpretation of the statute to be reasonable, we do not reach its contention that Congress has acquiesced in this interpretation.

## CONCLUSION

We reverse the summary judgment for Alaska and remand to the district court for further proceedings, including a determination whether the Forest Service has applied its selection criteria in an arbitrary and capricious manner.

SCHROEDER, Circuit Judge, concurring in part and dissenting in part.

I agree with the majority that the Alaska Statehood Act requires the state's land selections to have some nexus to existing or prospective communities. That interpretation resolves an ambiguity in the Act in a manner that is fully supported by the legislative history.

I cannot agree with the majority, however, when it upholds the Forest Service requirement that the selections generally be within 25 miles of existing or already planned communities. The Alaska Statehood Act permits the state to select "from lands within national forests in Alaska which are vacant and unappropriated." It requires that the land either be "adjacent to established communities" or, in the alternative, be "suitable for prospective community centers and recreational areas." Pub.L. No. 85–508, 72 Stat. 339, 48 U.S. note prec. § 21, Sec. 6(a). The Forest Service's wholly arbitrary 25–mile requirement is not even hinted at in the statute or its history. In insisting that the communities already be planned or in existence, the Service ignores the language of the statute which requires only that the land be "suitable for prospective" community development.

The only justification which the Forest Service offers for such an arbitrary standard is that the 25–mile restriction is reasonable as a distance for non-overnight recreation. The rule might make sense for suburban New Jersey. In Alaska, where residents routinely travel by plane and boat due to the scarcity of roads, such a limitation is impractical. When Congress authorized the Secretary of Agriculture to approve Alaska's land selections, it did not authorize disapproval on an arbitrary and irrational basis. Accordingly, in my view, the majority does not hold the Forest Service to an appropriate standard.

I therefore respectfully dissent.