630 F.2d 462
 15 ERC 1097, 10 Envtl. L. Rep. 20,877
 PPG INDUSTRIES, INC., The Ohio Edison Company, The B. F.
Goodrich Company, The Goodyear Tire and Rubber
Company, Petitioners,
v.
Douglas M. COSTLE, Administrator, The United States
Environmental Protection Agency, and The United
States Environmental Protection Agency,
Respondents.
 Nos. 78-3198, 78-3645, 78-3205, 78-3638, 78-3206, 78-3640,
78-3207 and 78-3639.
 United States Court of Appeals,
Sixth Circuit.
 Argued Dec. 5, 1979.
Decided Sept. 30, 1980.
 
 J. Jeffrey McNealey, Porter, Wright, Morris & Arthur, Columbus, Ohio, for petitioners in Nos. 78-3198 and 3645.
 V. Peter Wynne, Asst. Counsel, PPG Industries, Inc., Pittsburgh, Pa., for petitioners in No. 78-3198.
 Louis E. Tosi, Michael E. McConnell, Fuller, Henry, Hodge & Snyder, Toledo, Ohio, for petitioners in Nos. 78-3207, 3639, 3205, 3206 and 3640.
 C. Randolph Light, Fuller, Henry, Hodge & Snyder, Toledo, Ohio, for petitioners in Nos. 78-3639, 3205 and 3638.
 James C. Carroll, Ohio Edison Co., Akron, Ohio, for petitioners in Nos. 78-3205 and 3638.
 Irving Harris, Cincinnati, Ohio, Fuller, Henry, Hodge & Snyder, Toledo, Ohio, for intervenor Shell, in No. 78-3206.
 Ronald C. Hausmann, Gen. Counsel's Office, Environmental Protection Agency, Washington, D.C., Paul M. Kaplow, Pollution Control Section, Land & Natural Resources Division, U.S. Dept. of Justice, Washington, D.C., Mary Ann Muirhead, Environmental Protection Agency, Region V, Chicago, Ill., for respondents in all cases.
 Before EDWARDS, Chief Judge, and PHILLIPS and PECK, Senior Circuit Judges.
 JOHN W. PECK, Senior Circuit Judge.
 
 
 1
 Petitioners are four companies with industrial plants in Summit County, Ohio. They challenge the United States Environmental Protection Agency's designation of part of Summit County as "nonattainment" of the national air-quality standard for the pollutant sulfur dioxide (SO 2); by this designation the EPA labeled parts of Summit County, including most notably the City of Akron, as problem areas where special air pollution abatement measures should be undertaken.[1] We find EPA's designation to be unsupported by the administrative record, and we remand the agency's rule for further consideration. We do so reluctantly, but with the observation that zeal for cleaning the air does not justify administrative caprice or complacency.
 
 
 2
 I. THE MEANING OF "ATTAINMENT"
 
 
 3
 U.S. EPA promulgated the attainment status designation of Summit County pursuant to the legislative command of the Clean Air Act Amendments of 1977, which provided that
 
 
 4
 (d)(1) For the purpose of transportation control planning, part D of this subchapter (relating to nonattainment), part C of this subchapter (relating to prevention of significant deterioration of air quality), and for other purposes, each State, within one hundred and twenty days after August 7, 1977, shall submit to the Administrator a list, together with a summary of the available information, identifying those air quality control regions, or portions thereof, established pursuant to this section in such State which on August 7, 1977-
 
 
 5
 (A) do not meet a national primary ambient air quality standard for any air pollutant other than sulfur dioxide or particulate matter;
 
 
 6
 (B) do not meet, or in the judgment of the State may not in the time period required by an applicable implementation plan attain or maintain, any national primary ambient air quality standard for sulfur dioxide or particulate matter;
 
 
 7
 (C) do not meet a national secondary ambient air quality standard;
 
 
 8
 (D) cannot be classified under subparagraph (B) or (C) of this paragraph on the basis of available information, for ambient air quality levels for sulfur oxides or particulate matter; or
 
 
 9
 (E) have ambient air quality levels better than any national primary or secondary air quality standard other than for sulfur dioxide or particulate matter, or for which there is not sufficient data to be classified under subparagraph (A) or (C) of this paragraph.
 
 
 10
 (2) Not later than sixty days after submittal of the list under paragraph (1) of this subsection the Administrator shall promulgate each such list with such modifications as he deems necessary. Whenever the Administrator proposes to codify a list submitted by a State, he shall notify the State and request all available data relating to such region or portion, and provide such State with an opportunity to demonstrate why any proposed modification is inappropriate.
 
 
 11
 42 U.S.C.A. § 7407(d)(1)-(2) (Supp. 1979).
 
 
 12
 At first blush this subsection appears to require an assessment of the nation's air quality as of August 7, 1977. Petitioners conclude from the statute's reference to this specific date that actual, and not predicted, air quality must be the basis for attainment designations. EPA, however, has interpreted subsection (d)(1)(B), supra, to mean that "projected future violations may provide the basis for a nonattainment designation in currently clean areas." 43 Fed.Reg. 45998 (1978). Our agreement with this interpretation is implicit in our decision in Republic Steel v. Costle, 621 F.2d 797 (6th Cir. 1980), holding that the EPA's use of computer modeling in making attainment designations was not in itself arbitrary and capricious. Even computer models of air quality incorporating "worst case" assumptions regarding weather conditions, and assuming full capacity operation of pollution sources, may be used to determine "attainment" as defined by the EPA under its interpretation of the Clean Air Act Amendments. See Republic Steel, supra, at 804-806. We therefore reject petitioners' argument that EPA violated the Clean Air Act in basing its Summit County SO 2 designation on "hypothetical future circumstances rather than on actual August 7, 1977 air quality."
 
 
 13
 II. THE VALIDITY OF EPA'S RELIANCE ON ITS SUMMIT COUNTY
 
 AIR-QUALITY MODEL
 
 14
 Our broad approval of the use of computer modeling in making attainment status designations does not mean that modeling practices in individual cases need not be supported by the administrative record. While this Court may not second-guess the agency on technical matters, we are required to set aside administrative rules for which the record we review demonstrates a lack of a rational basis. Cincinnati Gas & Electric Co. v. EPA, 578 F.2d 660, 663-64 (6th Cir.), cert. denied, 439 U.S. 1114, 99 S.Ct. 1017, 59 L.Ed.2d 72 (1978); Cleveland Electric Illuminating Co. v. EPA, 572 F.2d 1150, 1161 (6th Cir. 1978), cert. denied, 439 U.S. 910, 99 S.Ct. 278, 58 L.Ed.2d 256 (1979).
 
 
 15
 EPA acknowledges that its initial designation of Summit County as nonattainment was based on modeling which incorporated erroneous data regarding the locations and emissions of the stationary (i.e., non-vehicular) pollution sources in Summit County. See Jt. App. at 535. This modeling had not proven a proper tool for setting emissions limitations in Summit County, and was under voluntary "reanalysis" by the agency. Id. EPA contends that this reanalysis was completed in the period between the agency's initial promulgation of attainment status designations on March 3, 1978, and the agency's second promulgation (following comments by interested parties) on October 5, 1978.
 
 
 16
 This assertion by the agency is hard to square with EPA's response to petitioners' comments on the initial Summit County SO 2 designation:
 
 
 17
 Based upon the modeling analysis performed by EPA in the development of the federally promulgated SO 2 regulations in Ohio, EPA must reaffirm the nonattainment designations for the primary SO 2 standard for Columbia, Lorain, Summit, and Trumbull Counties. However, these nonattainment areas have been redefined on a subcounty basis. (Emphasis added.)
 
 
 18
 43 Fed.Reg. 46000 (1978).
 
 
 19
 EPA's only reference to flaws in its modeling of Summit County came in response to comments by petitioners Goodyear and Goodrich:
 
 
 20
 While the Agency has recently remodeled the area in order to correct data base errors, the errors in the data base were not such that a change in attainment status was expected. A new regulation for Summit County will be proposed as rulemaking shortly supported by the remodeling which still shows that the area is not achieving standards and is therefore properly designated nonattainment.
 
 
 21
 43 Fed.Reg. 46001 (1978).
 
 
 22
 The illogic in these responses is patent. EPA contended that its initial designation of all of Summit County as nonattainment was supported by its first computer modeling attempt; yet the designation was to be changed in a "new rulemaking." EPA was, in short, only prospectively offering a rationale for its Summit County designation.
 
 
 23
 In rulemaking procedures governed by the Administrative Procedures Act, agencies are required to give reasons for their actions. See 5 U.S.C. § 553(c) (1976). See also Weyerhaeuser Co. v. Costle, 590 F.2d 1011, 1030 (D.C. Cir. 1978); Kennecott Copper Corp. v. EPA, 462 F.2d 846, 849 (D.C. Cir. 1972).
 
 
 24
 The promulgation of attainment designations is a procedure subject to the APA.[2] We hold that the administrative record does not support the agency's Summit County SO 2 designation, and therefore we remand to the agency for development of the record. We do not expect that final rules adopted after a "notice and comment" procedure will be supported by a record as complete as that produced by adjudicatory hearings. However, we do not accept EPA's reliance on a promised basis for its designation-a basis expected to emerge from a future rule-making. "(W)hen there is a contemporaneous explanation for agency decision, the validity of that action must 'stand or fall on the propriety of that finding, judged, or course, by the appropriate standard of review. If that finding is not sustainable on the administrative record made, then the . . . decision must be vacated and the matter remanded . . . for further consideration.' " Vermont Yankee Nuclear Power Corp. v. NRDC, 435 U.S. 519, 549, 98 S.Ct. 1197, 1214, 55 L.Ed.2d 460 (1978) (quoting Camp v. Pitts, 411 U.S. 138, 143, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973)).
 
 
 25
 In remanding the Summit County SO 2 designation for further development of the record, we are not substituting our judgment in an arcane technical controversy for that of the agency. We are reviewing questions of logic and legal procedure, matters in which courts may reasonably claim some expertise. EPA's perfunctory treatment of petitioners' comments has resulted in an administrative record from which it is impossible to determine whether the agency's Summit County designation was arbitrary and capricious.[3] In reviewing agency action under the "arbitrary and capricious" standard, it is our duty to consider whether administrative action was "based on a consideration of the relevant factors and whether there has been a clear error in judgment." Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); accord, Asarco, Inc. v. EPA, 616 F.2d 1153, 1158 (9th Cir. 1980). We are not required to "take the agency's word that it considered all relevant matters." Asarco, supra, 616 F.2d at 1160. EPA has given us little more than its word that it has "reanalyzed" the data fed into its computer model; however, EPA has given this word, not in the administrative record, but in conclusory fashion in argument before this Court.
 
 
 26
 EPA is required to give reasoned responses to all significant comments in a rulemaking proceeding. See 5 U.S.C. § 553(c) (1976); Alabama Power Co. v. Costle, 606 F.2d 1068, 1086 (D.C. Cir. 1979); Home Box Office, Inc. v. FCC, 567 F.2d 9, 35-36 (D.C. Cir.), cert. denied, 434 U.S. 829, 98 S.Ct. 111, 54 L.Ed.2d 89 (1977). This requirement is all the more urgent when an agency has perforce not followed usual "notice and comment" rulemaking procedures, but has promulgated "final" rules without a prior period for taking comments from interested parties.[4]
 
 
 27
 Among the comments presented by petitioners Goodyear and Goodrich after the promulgation of the first Summit County designation was the contention that the agency's use of modeling should be postponed until after the petitioners had completed their studies of the air-quality model used by EPA. EPA responded thus:
 
 
 28
 Finally, because the designation is supported by the RAM modeling and because there is no immediate prejudice to sources stemming from the designation, it is not reasonable to delay designating Summit County as a nonattainment area until the commenters' studies have been completed. The Agency has evaluated the studies to date and will publish its preliminary comments in the technical support document accompanying the Summit County regulation which will be proposed as rulemaking shortly. Upon completion of the studies, further analysis of the designation may be made.
 
 
 29
 43 Fed.Reg. 46001 (1978).
 
 
 30
 EPA adopted the position that its Summit County SO 2 designation had no deleterious consequences, and therefore the "technical support" for the designation could be furnished in a later rulemaking. It is true that the amended Clean Air Act did not require state licensing of new or modified pollution sources in nonattainment areas until July 1, 1979. 42 U.S.C.A. § 7502 (Supp. 1979). The EPA, however, applied its "emission offsets policy" to major new source construction in nonattainment areas prior to that date. 43 Fed.Reg. 8963 (1978). The agency's emission Offset Ruling, 41 Fed.Reg. 55524 et seq. (1976), strictly limits construction or modification of pollution sources wherever such actions would cause or aggravate the violation of national air-quality standards. While application of the Offset Ruling to sources in areas labelled nonattainment is not automatic, a nonattainment designation does create a "working presumption" of the Ruling's applicability. U.S. Steel Corp. v. EPA, 595 F.2d 207, as clarified, 598 F.2d 915, 916 (5th Cir. 1979). The presumption "works" against owners of major pollution sources in nonattainment areas. EPA's contention that petitioners were not immediately affected by the Summit County nonattainment designation is another attempt by the agency to question the ripeness for review of its § 7407(d) designations. EPA had already conceded the ripeness of its nonattainment designations in Alabama at the time the present case was argued. U.S. Steel, supra, at 595 F.2d 211. We do not see how the issue of the ripeness of EPA's Ohio designations is distinguishable from the issue conceded by EPA in U.S. Steel.
 
 III. MODELING v. MONITORING
 
 31
 Petitioners have argued, and may again on remand, that the EPA should base its new Summit County SO 2 designation on air-quality data produced by the extensive pollution monitoring network in Summit County. Petitioners base this argument on an interpretation of the Clean Air Act which has been outlined above: their contention is that attainment status designations must be based on "actual," and not predicted air quality. We do not find EPA's contrary interpretation of the Act to be unreasonable. We noted in Republic Steel, supra, that:
 
 
 32
 Congress has recognized that EPA may employ either monitoring or modeling. In § 171(2) of the Act, a nonattainment area is defined as "an area which is shown by monitored data or which is calculated by air quality modeling . . . to exceed any national ambient air quality standard." § 171(2), 42 U.S.C. § 7501(2).
 
 
 33
 Where Congress has itself described two alternative methods for EPA to determine nonattainment, the decision as to which to employ is certainly not initially one for this court. Our review concerns whether there has been a violation of law and if not, whether the EPA decision can appropriately be termed arbitrary and capricious.
 
 
 34
 621 F.2d at 805.
 
 
 35
 We believe, then, that if a nonattainment designation is based on modeling, EPA need only offer record support of the accuracy of the model used. The agency is not required by the Act, nor by its own policies,[5] to prefer monitoring to modeling in making attainment status designations. We acknowledge that "(t)heoretically, of course, actual air quality tests would have to be superior to modeling assumptions if there were sufficient monitors to constitute a fair test of the ambient air in a county." Republic Steel, supra at 805. If, however, EPA based a nonattainment designation on predictions of future violations, as the agency may do under the act (see Part I supra), monitored data which merely show historical attainment of air-quality standards do not undermine the agency's designation. Once EPA has chosen modeling as a basis for its designation, monitored data are relevant in a challenge to that designation only if (1) the parties proffering the data offer evidence of its reliability, and (2) the data tend to show that the agency's predictions were unsupportable. If these two tests are met, then at some point-the present record certainly does not indicate at what point[6]-it could be arbitrary and capricious for the agency to rely on air-quality modeling instead of on available monitored data in making an attainment status designation.
 
 IV. CONCLUSION
 
 36
 We grant the companies' petitions and remand these causes so that an administrative record supporting an SO 2 designation for Summit County may be developed. It may be that the agency's designation will remain unchanged in light of the agency's "reanalysis" of its Summit County model; we trust, however, that the agency's future promulgation will follow the procedures prescribed by law.
 
 
 
 [1]
 The abatement measure most abhorrent to the petitioners is a more onerous permit requirement for the construction or modification of pollution sources in nonattainment areas than in attainment ones. Compare 42 U.S.C.A. § 7503 with id. § 7475
 
 
 [2]
 Certain enumerated EPA rulemakings under the Clear Air Act are governed not by the APA, but by the Clean Air Act itself. 42 U.S.C.A. § 7607(d)(1) (Supp. 1979). Attainment status designations are not among those enumerated, see id. § 7607(d)(1)(A-N), and there is no indication that these designations are subsumed by the catchall phrase "such other actions as the Administrator may determine." See id. § 7607(d)(1)(N)
 
 
 [3]
 EPA has had its own difficulty in keeping the record straight. EPA in its brief asserted that the Administrator reaffirmed his initial designation of Summit County following the acceptance of comments from petitioners. Resp. brief at 19. In fact the Administrator amended his initial designation, labelling large parts of Summit County attainment for SO 2. Compare 43 Fed.Reg. 9026 (1978) with 43 Fed.Reg. 46015 (1978)
 
 
 [4]
 The agency had the statutorily required "good cause" for not following the customary procedure. Republic Steel, supra, at 803
 
 
 [5]
 The agency's guidelines do prefer use of monitored data in designating urban areas, but only where the monitored data are adequate. See Jt. App. at 58
 
 
 [6]
 Cf. Republic Steel, supra, at 805 ("How many . . . monitors would be needed for a meaningful sample of the ambient air of a county cannot be deduced from this record.")