767 F.2d 603
 23 ERC 1185, 15 Envtl. L. Rep. 20,760
 WESTERN OIL AND GAS ASSOCIATION, a nonprofit corporation;
Chevron U.S.A. Inc., a corporation; Getty Oil Company, a
corporation; Tenneco Oil Company, a corporation; and Union
Oil Company of California, a corporation, Petitioners,
v.
The UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, an agency
of the United States; and William D. Ruckelshaus, in his
capacity as Administrator of the United States Environmental
Protection Agency, Respondents.
 Nos. 83-7831, 84-7403.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 13, 1985.
Decided July 30, 1985.
 
 Michael A. Monahan, McCutchen, Black, Verleger & Shea, Los Angeles, Cal., for petitioners.
 David E. Dearing, Dept. of Justice, Washington, D.C., for respondents.
 Petition to Review a Decision of the United States Environmental Protection Agency.
 Before DUNIWAY, PREGERSON, and FERGUSON, Circuit Judges.
 DUNIWAY, Circuit Judge:
 
 
 1
 Western Oil and Gas Association (WOGA) petitions for review of an Environmental Protection Agency (EPA) rulemaking establishing a criterion which allows states to consider the location of significant air pollution sources in forming nonattainment area boundaries under the Clean Air Act. WOGA also challenges EPA's application of this criterion in approving several air quality nonattainment designations made by California. We deny the petition.
 
 
 2
 I. Background.
 
 
 3
 The Clean Air Act of 1970 established a combined state and federal program to control air pollution. The Act requires EPA to establish national ambient air quality standards (NAAQS), 42 U.S.C. Secs. 7408 and 7409, and requires each state to adopt, and submit to EPA for approval, an implementation plan specifying the manner in which the NAAQS will be attained within designated air quality control regions, 42 U.S.C. Secs. 7407(a) and 7410(a).
 
 
 4
 In 1977, Congress amended the Act, adopting a more elaborate system of air quality planning (new Part D) and extending the original deadlines for the attainment of the NAAQS. New subsection 107(d) directed each state to submit to the Administrator a list identifying those regions which met the NAAQS ("attainment areas"), and those which did not meet the NAAQS ("nonattainment areas") or which could not be classified for lack of data. 42 U.S.C. Sec. 7407(d)(1). Congress directed the Administrator to then "promulgate each such list with such modifications as he deems necessary." 42 U.S.C. Sec. 7407(d)(2).
 
 
 5
 The 1977 Amendments gave each state authority to redesignate its air quality control regions "for purposes of efficient and effective air quality management." 42 U.S.C. Sec. 7407(e)(1).
 
 
 6
 Under new Part D, Section 172, revised implementation plans for nonattainment areas must provide for attainment of each NAAQS "as expeditiously as practicable," 42 U.S.C. Sec. 7502(a)(1), and require "reasonable further progress ... including such reduction in emissions from existing sources in the area" obtainable through "reasonably available control technology." 42 U.S.C. Sec. 7502(b)(3).
 
 
 7
 The California State Air Resources Board (CARB) submitted its Section 107(d) attainment status designations to EPA in December 1977. These designations were made on a county-wide basis, except where CARB found a different approach more appropriate, such as where "greater efficiency in air quality management will be better served through the use of a different designation." EPA adopted CARB's designations in March 1978, together with designations from the other states. 43 Fed.Reg. 8962 (1978).
 
 
 8
 In November 1981, pursuant to this court's order in Western Oil and Gas Association v. United States Environmental Protection Agency, 9 Cir., 1980, 633 F.2d 803, 813, (WOGA I ) EPA published a notice of proposed rulemaking inviting public comment on the above designations and stating criteria for defining nonattainment status. 46 Fed.Reg. 55722-25 (1981). Criterion No. 5 states:
 
 
 9
 A nonattainment area should be as small as possible while encompassing all areas of expected violation and all sources of significant impact on those violations.
 
 
 10
 46 Fed.Reg. 55724 (1981). (Emphasis added.)
 
 
 11
 WOGA criticized the underlined portion of this criterion and proposed new, narrower boundaries for some of the nonattainment areas designated by CARB, including the San Francisco Bay Area. In September 1983, EPA published a final rulemaking, retaining several of CARB's challenged designations and rejecting WOGA's criticism of Criterion No. 5. 48 Fed.Reg. 40722-24 (1983). WOGA timely petitions for review.
 
 
 12
 The practical effect of the criticized language of Criterion No. 5 can be seen in the CARB designation of the San Francisco Bay Area. It includes all of the counties in the Bay area, beginning with Napa, Sonoma and Marin on the north and west, through Solano, Contra Costa, Alameda and Santa Clara on the east and south, and San Francisco and San Mateo on the west and south.
 
 
 13
 Appellants object to the inclusion of Napa, Solano, Sonoma and Marin Counties, of a strip on the northern and western boundary of Contra Costa County and part of the western boundary of Alameda County, as well as San Francisco and most of San Mateo Counties. The portions of the Bay Area Basin where tests of the ambient air quality show "nonattainment" are in Contra Costa County south and east of the strip, in Alameda County east and south of the strip, in Santa Clara County and in part of San Mateo County adjacent to the Bay.
 
 
 14
 The portions that appellants want excluded and treated as being in a separate "attainment" area embrace a major part of the heavy industry in the Bay area, and in particular a series of large oil and gas refineries in the strip beginning at Richmond in Contra Costa County and located on the east shore of San Francisco Bay, the south shore of San Pablo and Suisun Bays, and the south bank of the Sacramento river. There are other heavy industries both in that strip and along the Bay and river in southern Sonoma County, and southern Marin County to a lesser extent, and in San Francisco and San Mateo Counties. One would expect these areas to be "nonattainment," but, if treated separately, they would be "attainment" areas. The reason is the prevailing winds, which blow from the west and north toward the south and east, thus carrying emissions from the parts of the Bay area in which WOGA and its co-plaintiffs do business into the part of the area that is clearly "nonattainment", and contributing to that condition. That is what lies behind this proceeding. Stricter air pollution control requirements apply in "nonattainment" areas than in "attainment" areas.
 
 
 15
 II. Standard of Review.
 
 
 16
 Section 706 of the Administrative Procedure Act permits a reviewing court to set aside agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. Sec. 706(2)(A), Montana Power Co. v. EPA, 9 Cir., 1979, 608 F.2d 334, 344, or in excess of statutory authority, Sec. 706(2)(C).
 
 
 17
 A reviewing court owes considerable deference to agency interpretations of a statute it administers. Chevron, USA, Inc. v. Natural Resources Defense Council, 1984, --- U.S. ----, 104 S.Ct. 2778, 2782-83, 81 L.Ed.2d 694; Markair, Inc. v. C.A.B., 9 Cir., 1984, 744 F.2d 1383, 1385. If the statute is silent or ambiguous with respect to the precise question at issue, the court must decide "whether the agency's answer is based on a permissible construction of the statute." Chevron, supra, 104 S.Ct. at 2782.
 
 
 18
 The court need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding.
 
 
 19
 Id., note 11. The courts, however, are the final authorities on issues of statutory construction, and we must reject administrative interpretations of a statute that are inconsistent with the statutory mandate or that frustrate the policy that Congress sought to implement. Markair, supra, 744 F.2d at 1385.
 
 
 20
 III. Discussion.
 
 
 21
 The Clean Air Act defines the term "nonattainment area" for any air pollutant as
 
 
 22
 an area which is shown by monitored data or which is calculated by air quality modeling [or other reliable methods] to exceed any national ambient air quality standard for such pollutant.
 
 
 23
 42 U.S.C. Sec. 7501(2). WOGA argues that this definition bars the consideration of any factors other than air quality data in formulating attainment status designations and therefore invalidates Criterion No. 5 as well as the California designations at issue. We reject this narrow interpretation of the Act.
 
 
 24
 Section 107(c) authorizes the Administrator to designate as an air quality control region "any interstate area or major intrastate area which he deems necessary and appropriate for the attainment and maintenance of ambient air quality standards." 42 U.S.C. Sec. 7407(c). The Administrator cannot modify a state designation without asking the state to submit "all available data relating to such region or portion" and allowing the state to demonstrate why any modification would be "inappropriate." 42 U.S.C. Sec. 7407(d)(2). These sections provide for considerable EPA discretion in designating area boundaries large enough to achieve the purposes which underlie the classification scheme. Moreover, Criterion No. 5 is entirely consistent with the Act's requirement that states provide for the attainment of NAAQS in nonattainment areas "as expeditiously as practicable," 42 U.S.C. Sec. 7502(a)(1), and with each state's authority under the Act to redesignate nonattainment boundaries "for purposes of efficient and effective air quality management," 42 U.S.C. Sec. 7407(e)(1). The EPA rulemaking at issue is also fully consistent with the legislative history. See, e.g., H.R.Rep. No. 95-294, 95th Cong., 1st Sess. 213, reprinted in 1977 U.S.Code Cong. and Ad.News 1077, 1292; H.R.Rep. No. 728, 90th Cong., 1st Sess., 14-15, reprinted in 1967 U.S.Code Cong. and Ad.News 1938, 1950.
 
 
 25
 WOGA relies upon Alabama Power Co. v. Costle, D.C.Cir., 1980, 636 F.2d 323. There, the D.C. Circuit vacated EPA regulations that it found to be contrary to the plain language of Section 165(a) (Part C) of the Act, a provision not at issue in the present case. Id. at 365-68.
 
 
 26
 In its final rulemaking in response to WOGA's criticism, EPA explained the rationale underlying Criterion No. 5. 48 Fed.Reg. 40723. EPA stated that nonattainment area designations must include significant air pollution sources in order for a state to comply with the Act's requirement that it develop expeditious attainment of air quality standards. If states failed to consider such sources,
 
 
 27
 ... the possible over-control of sources within the designated nonattainment area and the probable under-control of sources outside of the area could result in an economically and technically unreasonable strategy and continued NAAQS violations.
 
 
 28
 Id. Referring to the San Francisco Bay Area Basin, EPA stated:
 
 
 29
 Since emissions originating in the northwest counties can significantly contribute to the violations measured in the southeast counties, EPA cannot redesignate those counties to attainment.
 
 
 30
 Id.
 
 
 31
 EPA's reasoning coincides with the analysis of CARB, the agency responsible for the California designations:
 
 
 32
 A number that says everything is fine in northern Contra Costa County does not say anything about the refineries whose emissions are transported downwind to cause an ozone problem in Oakland or San Jose. Part D of the Act, however, makes it clear that the elaborate measures set out in Section 172 and 173 are supposed to provide for the attainment of the NAAQS within a specific time period; this can only be done by designating an area large enough to allow for the imposition of the needed control measures on the sources that are causing the problem. We believe it is necessary to treat the cause, not the symptom.... Those responsible for solving the air quality problem, local governments and the state, are unanimous in this opinion.
 
 
 33
 REC.DOC. No. 63, at 3; J.A. 468.
 
 
 34
 To us, the foregoing is a statement of common sense. We decline to hold that it is arbitrary, capricious, an abuse of discretion or not in accordance with law or in excess of statutory authority.
 
 
 35
 Petition denied.