**STATE OF OHIO, Petitioner,**

v.

**William D. RUCKELSHAUS, Administrator, United States Environmental Protection Agency, Respondent.**

**No. 84–3667.**

United States Court of Appeals, Sixth Circuit.

Argued Aug. 30, 1985.

Decided Nov. 15, 1985.

Martha E. Horvitz, argued, Susan E. Flannery, Asst. Attys. Gen., Environmental Enforcement Section, Columbus, Ohio, for petitioner.

John C. Ulfelder, E.P.A., Washington, D.C., Diane L. Donley, Pollution Control Section, Land & Natural Resources Div., U.S. Dept. of Justice, Washington, D.C., Catherine L. Fox, Office of Regional Counsel, EPA, Chicago, Ill., Peter S. Everett, argued, U.S. Dept. of Justice, Washington, D.C., for U.S. E.P.A.

Before LIVELY, Chief Judge, WELLFORD, Circuit Judge, and BERTELSMAN, District Judge.*

LIVELY, Chief Judge.

Ohio seeks review of final action of the United States Environmental Protection Agency (EPA) under the Clean Air Act as amended (the Act). 42 U.S.C. §§ 7401 et seq. The particular provisions of the Act in controversy are portions of Part D of Subchapter I, 42 U.S.C. §§ 7501–7508, and section 107(d) and (e), 42 U.S.C. § 7407(d) and (e), all of which were added to the Act by the Clean Air Act Amendments of 1977, Pub.L. 95–95.

The question for decision is whether EPA may refuse a state's request to redesignate a county from "nonattainment" to "attainment" where actual monitoring or modeling data from the county show that air quality within the county meets the required ambient standard. EPA denied Ohio's request to redesignate Lorain County as an attainment area for ozone upon determining that, although the air within the county satisfied the National Ambient Air Quality Standards (NAAQS) for ozone, pollutants originating in Lorain County added significantly to the ozone levels in the Cleveland urban area, of which Lorain County is a part. All of the counties in the Cleveland urban area are part of the Greater Cleveland Intrastate Air Quality Control Region (AQCR). Ohio argued that the boundary of the Cleveland urban nonattainment area should be changed by removing Lorain County and filed a petition for review of the EPA's action.

---

\* The Honorable William O. Bertelsman, Judge, United States District Court for the Eastern District of Kentucky, sitting by designation.

## I.

Though the precise question presented in the present appeal is one of first impression before this court, we have dealt with the Clean Air Act Amendments of 1977 in a number of opinions. *E.g., Air Pollution Control District of Jefferson County v. U.S. E.P.A.*, 739 F.2d 1071 (6th Cir.1984); *National Steel Corp. v. Gorsuch*, 700 F.2d 314 (6th Cir.1983); *PPG Industries, Inc. v. Costle*, 630 F.2d 462 (6th Cir.1980). In addition, the Supreme Court succinctly reviewed the history of the congressional efforts to bring air pollution under control in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 2783–87, 81 L.Ed.2d 694 (1984). We will not repeat this background discussion, but will go directly to the issues involved in this appeal.

Acting pursuant to section 107(d)(1) of the Act, 42 U.S.C. § 7407(d)(1),[1] Ohio listed nonattainment areas within the State. It identified the counties comprising the Cleveland urban area, including Lorain, Medina, Lake and Geauga Counties, as nonattainment for ozone. In 1982 Ohio, acting pursuant to section 107(e)(1) of the Act, 42 U.S.C. § 7407(e)(1),[2] requested a revision of the ozone nonattainment designations to remove 46 counties, including Lorain, Medina, Lake and Geauga Counties. There was no request that Cuyahoga County, where the City of Cleveland is located, be redesignated.

EPA published a notice of proposed rulemaking on August 10, 1983 in response to the request. The notice invited public comment and stated that EPA proposed to grant the request as to 36 counties and deny it as to ten, including Lorain and Medina. Following the period of comment, EPA issued its final rulemaking, approving Ohio's redesignation of 37 counties and disapproving the redesignation of nine counties, including Lorain. 49 *Fed.Reg.* 24124 (June 12, 1984). The county approved for redesignation as "attainment" in the final action that had been refused redesignation in the first EPA proposal was Medina. Following the final action of EPA, the Cleveland urban nonattainment area consisted of Cuyahoga, Lorain, Geauga and Lake Counties.

It is undisputed that monitoring data showed that the air within Lorain County met the NAAQS for ozone. EPA recognized this fact, but refused to redesignate Lorain County on the ground that a significant portion of the ozone pollution in the Cleveland urban nonattainment area derives from emissions in Lorain County, which lies upwind from the other three

---

1. 42 U.S.C. § 7407(d)(1) provides:

(1) For the purpose of transportation control planning, part D (relating to nonattainment), part C (relating to prevention of significant deterioration of air quality), and for other purposes, each State, within one hundred and twenty days after August 7, 1977, shall submit to the Administrator a list, together with a summary of the available information, identifying those air quality control regions, or portions thereof, established pursuant to this section in such State which on August 7, 1977—

(A) do not meet a national primary ambient air quality standard for any air pollutant other than sulfur dioxide or particulate matter;

(B) do not meet, or in the judgment of the State may not in the time period required by an applicable implementation plan attain or maintain, any national primary ambient air quality standard for sulfur dioxide or particulate matter;

(C) do not meet a national secondary ambient air quality standard;

(D) cannot be classified under subparagraph (B) or (C) of this paragraph on the basis of available information, for ambient air quality levels for sulfur oxides or particulate matter; or

(E) have ambient air quality levels better than any national primary or secondary air quality standard other than for sulfur dioxide or particulate matter, or for which there is not sufficient data to be classified under subparagraph (A) or (C) of this paragraph.

2. 42 U.S.C. § 7407(e)(1) provides:

(1) Except as otherwise provided in paragraph (2), the Governor of each State is authorized, with the approval of the Administrator, to redesignate from time to time the air quality control regions within such State for purposes of efficient and effective air quality management. Upon such redesignation, the list under subsection (d) of this section shall be modified accordingly.

counties in the nonattainment area. The geographical relationship of the four counties in the designated nonattainment area, plus Medina County, is shown in the portion of the Ohio map of counties reproduced here:

In its comments on proposed rulemaking Ohio conceded that "[e]missions from Lorain County contribute to the ozone concentrations in the Cleveland area and should be included in the design of any control program." (Letter from Ohio EPA to U.S. EPA, August 12, 1983). However, Ohio took the position that Lorain County was not in air quality violation for ozone and should not be listed as nonattainment.

## II.

Though Ohio makes a number of subsidiary arguments, its basic position is that the Act does not authorize EPA to disapprove a reasonable state designation of an area as "attainment" on the ground that emissions from the area may potentially add to the pollution of a nonattainment area. Underlying this argument is the contention that the state may treat a county as an "area" for purposes of § 7407(d)(1) and require EPA to so treat it, despite the fact that EPA has designated the county as part of a larger area. Ohio relies on the definition of "nonattainment area" in section 171(2) of the Act, 42 U.S.C. § 7501(2) (1982), "an area which is shown by monitored data or which is calculated by air quality modeling (or other methods determined by the Administrator to be reliable)

to exceed any national ambient air quality standard for such pollutant." Since Lorain County has shown by monitored data that its air does not contain ozone in excess of the NAAQS, it cannot be brought within this definition and, thus, may not be designated "nonattainment."

Ohio recognizes that Lorain County is in the Cleveland urban area but insists that it may subdivide that area by counties on the basis of air quality information. Ohio argues that the states have the primary role in making such decisions, and EPA should accord deference to state determinations regarding the size of areas designated. Given the measured air quality data on which the request for redesignation of Lorain County was based, EPA acted arbitrarily and capriciously in continuing to designate Lorain County "nonattainment," according to Ohio.

Ohio also argues that EPA had an alternative and preferable means at its disposal for dealing with the Cleveland ozone problem. EPA should have approved the redesignation of Lorain County to attainment, but required Ohio to amend its State Implementation Plan (SIP) to insure that pollutants from Lorain County, though an attainment area, did not add significantly to the ozone problems of the downwind Cleveland area. Ohio contends that SIPs are at the heart of the entire scheme for improving the quality of the Nation's air, and that EPA should be required to follow this path to achieve NAAQS within Ohio, including the Cleveland area. Ohio's preference for this alternative means of enforcing compliance with the NAAQS arises from the fact that Part D of the Act, which applies only to nonattainment areas, contains significant enforcement tools not available to EPA under other provisions. For example, EPA can impose a ban on new construction, require a new source review program that may require greater emissions reduction than other sections of the Act would require, require a motor vehicle inspection and maintenance program with a cutoff of federal funds for noncompliance and require ozone sources to meet emissions limi-

tations at least reflective of reasonably available control technology. The possibility of a ban on new construction and the loss of federal funds for failure to implement a vehicle inspection and maintenance program are matters of serious concern to a local governmental unit.

Finally, Ohio contends that the record does not support EPA's disapproval of the request for redesignation of Lorain County. Instead of relying on modeling or monitoring in the Cleveland area, EPA based its conclusions about Lorain County's contributions to Cleveland's ozone levels on findings made with respect to other major urban centers such as Chicago, St. Louis, Los Angeles and Detroit. In addition, Ohio charges that EPA was totally inconsistent in approving redesignation of Medina County, which also has a direct association with the Cleveland area, while disapproving the request for Lorain County.

### III.

EPA maintains that it acted reasonably and within its clear authority under § 7407 in disapproving Ohio's request with respect to Lorain County. It is not required to designate nonattainment areas by reference to county boundaries. Thus, the fact that a county within a nonattainment area is not in violation of NAAQS for a pollutant is irrelevant. As EPA interprets § 7407(d), it is permitted to designate nonattainment areas by boundaries which include important sources of pollution that contribute to the pollution levels of the area, without making a separate determination for each political subdivision within the area. EPA asserts that its interpretation of the statute is reasonable since it serves the underlying goal of the Act by requiring steps to be taken that will move an area toward attainment. EPA finds nothing in the language or legislative history of the Act or the 1977 Amendments that would require it to make Lorain County a "section 107(d) area" separate from the general Cleveland urban area of which it is a part.

EPA argues that keeping Lorain County within the nonattainment area serves the purpose behind the enactment of Part D. That purpose was to bring about incremental air quality improvement and timely attainment of national standards in those areas that failed to attain the NAAQS by the deadlines originally set out in the Act. The fact that EPA might have proceeded by the alternate route of requiring Ohio to revise its SIP does not deprive it of authority to proceed under § 7407(d) and Part D, which were designed specifically to deal with the nonattainment problem to which the 1977 Amendments were directed.

EPA responds to Ohio's charge that its denial of redesignation was not supported by the record with several contentions. In the first place, it points to Ohio's admission that pollutants from Lorain County contribute to Cleveland's ozone problem. It also argues that the record contains meteorological data which indicate that the prevailing winds during the peak ozone season do flow from Lorain County to Cuyahoga and Lake Counties. Further, monitoring results in the Cleveland urban area showed ozone violations. These are included in the record. In addition, the record contains documentation that significant quantities of ozone precursors are emitted from sources in Lorain County. Lorain County's emissions constitute 18.7% of the total organic pollutant emissions originating in the four county Cleveland urban nonattainment area.

With respect to the use of data from other urban areas, EPA makes two responses. In the first place, it notes that Ohio did not object to the use of these data during the administrative proceedings, and argues that it may not object at this stage. In addition, EPA maintains that the causes of ozone buildups in major urban centers are well known and the testing done in the area of other large cities provides valid data for determining the effect of Lorain County's emissions on Cleveland.

### IV.

#### A.

█ In considering an agency's construction of a statute which it administers a

court applies a narrow standard of review. If Congress has spoken directly to the precise question in issue, and its intent is clear, that ends the inquiry because both the agency and the court "must give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A., Inc. v. National Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984) (footnote omitted). If the court determines that Congress has not addressed the precise question directly, the duty of the court is to determine whether the agency has based its answer to the question "on a permissible construction of the statute." *Id.,* 104 S.Ct. at 2782. The Supreme Court has long recognized the principle of deference which requires courts to accord "considerable weight" to the construction by an executive department of a statute that it administers. *Id.*

 The principle of deference does not permit the court to become a rubber stamp, automatically approving every agency interpretation of a statute. Rather, it requires "a searching and careful" inquiry into the facts of each case to determine that the agency has acted within the scope of its statutory authority. *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971). After this determination has been made, in order to approve agency action the reviewing court must find that the agency's choice satisfies the standard of the Administrative Procedure Act (APA), that is, that it is not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). This court has recently held that the APA standard presumes that agency actions are valid and that we are required to uphold EPA decisions supported by a "rational basis." *Air Pollution Control District of Jefferson County v. United States Environmental Protection Agency,* 739 F.2d 1071, 1083 (6th Cir. 1984). As we noted in *National Steel Corp. v. Gorsuch,* 700 F.2d 314, 321 (6th Cir.1983), it is not necessary that the agency's construction of the statute be the only permissible one. Rather, its construction

"must be upheld unless that view is plainly *unreasonable.*" (Emphasis in original).

### B.

With these firmly established principles in mind, we turn to the issues in this case. The statutory provision in question, § 7407(d)(1), does not speak directly to the precise question of whether EPA may include in a nonattainment area a county whose air quality meets national standards. The statute requires each state to identify "those air quality regions, or portions thereof" which do not meet the NAAQS for any air pollutant. Counties are not mentioned, but both Lorain and Medina Counties had previously been included in the Greater Cleveland AQCR. Part D of the Act defines "nonattainment area" as "an area which is shown by monitored data or which is calculated by air quality modeling (or other methods determined by the Administrator to be reliable) to exceed any national ambient air quality standard" for a particular pollutant. § 7501(1). Again, Congress has not directly dealt with the question posed by this appeal. This definition addressed "nonattainment" without prescribing any criteria for determining the proper components of an "area." In addition, § 7407(e)(1) provides no standard which is to be followed by the administrator of EPA in approving or disapproving a request for redesignation. Thus under the *Chevron* formulation we seek to determine whether EPA's answer to the question is "based on a permissible construction of the statute." 104 S.Ct. at 2782.

 We conclude that EPA acted reasonably in determining that Lorain County should be included in the Cleveland urban nonattainment area even though actual monitoring disclosed an acceptable level of ozone within the county. The purpose of the Clean Air Act Amendments of 1977 was to ensure additional efforts to bring those areas of the country which had not met the time requirements of the Act into compliance. Congress adopted the scheme

of dividing states into attainment, nonattainment and unclassified areas. For nonattainment areas it provided new stringent sanctions which could be applied by EPA to encourage compliance. *United States Steel Corp. v. United States Environmental Protection Agency,* 605 F.2d 283, 284–85 (7th Cir.1979), *cert. denied,* 444 U.S. 1035, 100 S.Ct. 710, 62 L.Ed.2d 672 (1980). Once a state has designated an area "nonattainment," that area may be redesignated only with the approval of EPA. It appears a permissible exercise of this authority for EPA to deny redesignation with respect to a component of a nonattainment area which produces a substantial portion of the area's pollution even though the air within that component tests at an acceptable level. If it were otherwise, the fortuitous circumstance that pollutants and precursors emitted within a county are moved by prevailing winds to a neighboring county would deprive EPA of the tools Congress provided for attacking pollution in the area of which the county is logically a part. The Cleveland urban area fits the definition of a nonattainment area because the ozone levels in and around Cleveland exceed the NAAQS.

In response to 1980 directions from the United States Court of Appeals for the Ninth Circuit, EPA promulgated criteria for defining nonattainment status. 46 *Fed. Reg.* 55722–25 (1981); see *Western Oil and Gas Association v. United States Environmental Protection Agency,* 633 F.2d 803, 813 (9th Cir.1980) (*WOGA I*). Criterion No. 5 stated:

> A nonattainment area should be as small as possible while encompassing all areas of expected violation and all sources of significant impact on those violations.

46 *Fed.Reg.* 55724 (1981).

Western Oil and Gas Association (WOGA) criticized the criterion to the extent it prescribed the inclusion of all sources of significant impact on violations. When EPA included Criterion No. 5 in a final rulemaking, WOGA petitioned for review, seeking an "attainment" designation for portions of the San Francisco Bay Area

which contained heavy industrial concentrations, but would have been attainment areas if treated separately. As in the present case, the disputed areas were upwind from portions of the Bay Area which were clearly nonattainment. The Court of Appeals upheld EPA's designation of the downwind portions of the area as nonattainment even though the air within those portions satisfied the NAAQS. *Western Oil and Gas Association v. United States Environmental Protection Agency,* 767 F.2d 603 (9th Cir.1985) (*WOGA II*). The court determined that Criterion No. 5 was entirely consistent with the language of the Act, as amended, and with the legislative history.

■ We agree with the Ninth Circuit's conclusions in *WOGA II.* As did WOGA in that case, Ohio relies in the present case on *Alabama Power Co. v. Costle,* 636 F.2d 323 (D.C.Cir.1979). The Ninth Circuit dismissed WOGA's arguments by stating that *Alabama Power* concerned Part C of the Act, which was not in issue. We agree that *Alabama Power* is not controlling. Part C deals with the prevention of significant deterioration of air quality in areas that have attained national standards for ambient air quality. The court in *Alabama Power* concluded that for purposes of the requirements of Part C, Congress intended that the location of a proposed source of pollution should be the key determinant in deciding whether a PSD (prevention of significant deterioration) permit should be required for construction in "any area to which this part [Part C] of the Act applies." *Id.* at 365–66. The court vacated EPA's denial of a PSD permit because the proposed source was not in an area to which the PSD requirements applied. From this holding Ohio argues that the location of pollution emitting sources in Lorain County, where the NAAQS have been met, provides no justification for including the county in a nonattainment area.

■ The D.C. Circuit found in *Alabama Power* that Congress had clearly stated its intention that location control in dealing with PSD permits under Part C. No such

clear intent can be discerned with respect to the designation of nonattainment areas for purposes of Part D. In the absence of such a clear statement, EPA is authorized to require the boundaries of a nonattainment area to include those places whose emissions contribute significantly to measured "exceedences." This is not an unreasonable construction of the Act, given its overriding purpose.

### C.

Having concluded that EPA acted within the scope of its authority, we must now consider whether it acted arbitrarily and capriciously in this case, as claimed by Ohio. Ohio admitted on the record that emissions from Lorain County contribute to the ozone concentrations in the Cleveland area. Given this concession, it is difficult to conceive how EPA could be found to have acted arbitrarily or capriciously by including Lorain County in the Cleveland urban nonattainment area. The technical materials in the record support the conclusion that the contribution of Lorain County's emissions to the Cleveland ozone problem is significant. We do not believe the fact that EPA did not conduct measurements of the wind-factor effect in the Cleveland area is important. The tests in other major urban areas demonstrated satisfactorily that ozone precursors are carried long distances in the atmosphere and combine with other substances to form ozone in such areas. The results of tests in a number of urban areas were sufficiently similar to form a reliable basis for concluding that the same condition would occur in Cleveland. Even if these data were not sufficient to support EPA's conclusion, Ohio cannot escape its own concession of the effect of Lorain County's emissions on the ozone concentrations in the Cleveland area.

Ohio also argues that EPA acted arbitrarily in redesignating Medina County while refusing to remove the "nonattainment" designation from Lorain County. Both counties lie upwind from both Cleveland and Lake County which have ozone levels in excess of the NAAQS. However, compared with the emissions from Lorain County, those from Medina County are insignificant. Lorain County is heavily industrialized while Medina is largely rural with only scattered sources of pollution. EPA acted in the exercise of its discretion in removing Medina County from the nonattainment area while refusing to redesignate Lorain County. We find no abuse of discretion.

The petition for review is denied.

WELLFORD, Circuit Judge, concurring.

I concur with the able analysis of the issues in this case by Chief Judge Lively. I write separately only to bespeak my dissatisfaction with EPA's failure to conduct measurements of the wind-factor effect in the Cleveland area of emissions from Lorain County. I find no reasonable explanation for that failure on the part of EPA in this case, and the conducting of such tests would certainly have made this case less difficult in disposition. My only reservation here is this lack of proof that would have demonstrated clearly the basis for the EPA action.