770 F.2d 779
 SOUTHERN CALIFORNIA EDISON COMPANY and Pacific Gas and
Electric Company, Petitioners,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent.
P.U.C. State of California, Bonneville Power Administration,
Congressman Jim Weaver and Direct Service
Industrial Customers (DSI), Intervenors.
 Nos. 83-7841, 83-7942 and 84-7182.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 4, 1985.
Decided Sept. 3, 1985.
 
 John D. McGrane, Floyd L. Norton, IV, Matthew W.S. Estes, Reid & Priest, Washington, D.C., Richard K. Durant, Frank J. Cooley, Mark A. Frazee, Rosemead, Cal., for petitioners.
 
 
 1
 Jack F. Fallin, Jr., Joshua Bar-Lev, Harry W. Long, Jr., San Francisco, Cal., for Pacific Gas & Elec. Co.
 
 
 2
 Robert M. Greening, Jr., Tooze, Kerr, Marshall & Shenker, Portland, Or., for Pacific Northwest Generating Co.
 
 
 3
 Eric Redman, Matthew Cohen, Heller, Ehrman, White & McAuliffe, Seattle, Wash., for Direct Service Indus. Customers.
 
 
 4
 William H. Satterfield, Gen. Counsel, Barbara J. Weller, Deputy Solicitor, Joel M. Cockrell, Atty., F.E.R.C., Washington, D.C., for F.E.R.C.
 
 
 5
 Charles H. Turner, U.S. Atty., Jack G. Collins, Chief, Civ. Div., Thomas C. Lee, Asst. U.S. Atty., Harvard P. Spigal, Gen. Counsel, John A. Cameron, Jr., Asst. Gen. Counsel, R. Elaine Hallmark, Atty., B.P.A., Portland, Or., for Bonneville Power Admin.
 
 
 6
 Petition for Review of a Final Rule by the Federal Energy Regulatory Commission.
 
 
 7
 Before CHAMBERS, BOOCHEVER, and BEEZER, Circuit Judges.
 
 BEEZER, Circuit Judge:
 
 8
 Petitioners Southern California Edison Company (SCE) and Pacific Gas and Electric Company (PG & E) seek review of a final rule promulgated by the Federal Energy Regulatory Commission (FERC). The final rule established procedures for the approval of interim rates submitted by the Bonneville Power Administration (BPA) under the Pacific Northwest Electric Power Planning and Conservation Act.
 
 
 9
 We affirm in part, reverse in part, and remand.
 
 
 10
 * Background
 
 A. Statutory Framework
 
 11
 In 1980, Congress passed the Pacific Northwest Electric Power Planning and Conservation Act (the Regional Act), 16 U.S.C. Secs. 839-839h (1982), in response to increasing demand for inexpensive hydroelectric power generated on the Columbia River system. The Bonneville Power Administration (BPA) is a federal power marketing agency, authorized by Congress to sell federal power in the Pacific Northwest region.
 
 
 12
 Under the Regional Act, only "surplus energy" and "surplus peaking capacity" may be sold outside the region. Central Lincoln Peoples' Utility District v. Johnson, 735 F.2d 1101, 1112 (9th Cir.1984); see 16 U.S.C. Secs. 839c(f), 839f(c). Power resources are considered "surplus" when there is no market or demand for them at any established rate within the region. 16 U.S.C. Sec. 839f(c). The sales generally are to the Southwestern states, principally California. The majority of power sold outside the region is "nonfirm" energy, or energy in excess of that which the BPA can reliably plan on producing at a critical water level. Id.
 
 
 13
 BPA must submit its rate schedules to FERC for confirmation and approval. 16 U.S.C. Secs. 839e(a)(2) and 839e(k). FERC conducts its review pursuant to substantive standards set forth in the Regional Act. The Regional Act defines two separate review standards, one for BPA's regional rates and one exclusively for BPA's rates for nonfirm energy sold outside of the region. 16 U.S.C. Secs. 839e(a)(2), 839e(k).
 
 B. Facts
 
 14
 The effective date of the Regional Act was December 5, 1980. Within one year of that date, FERC was required to establish procedures for granting interim approval of BPA rates. See 16 U.S.C. Sec. 839e(i)(6). On December 4, 1981, FERC issued a rule establishing procedures for the acceptance of BPA rates on an interim basis, subject to change after notice and opportunity for comment. 46 Fed.Reg. 60,813 (1981).
 
 
 15
 FERC issued a final rule in August 1983. The final rule revised the interim rule and established procedures for final rate approval. FERC noted that the procedures "were not previously published in the interim rule." 48 Fed.Reg. 37,006 (1983). The final rule stated that FERC's "General Rules of Practice and Procedure ... other than Rule 2201 (Ex Parte Communications), will apply to any filings, hearings, or other procedures under this Part." 18 C.F.R. Sec. 300.1(a) (1983). FERC emphasized, however, that it would ensure the fairness of its on-the-record proceedings in a manner consistent with the case law and applicable statutes dealing with ex parte communications. 48 Fed.Reg. 37,01 1 (1983). FERC also articulated the different standards it would apply in reviewing BPA's rates. 18 C.F.R. Sec. 300.21(c).
 
 
 16
 FERC further stated that the Regional Act did not require applications for rehearing as a jurisdictional prerequisite to obtaining judicial review of the promulgated rules. Nevertheless, submission of written comments was permitted on the changes made with respect to the procedures for interim approval. The comments received were treated as petitions for reconsideration. 48 Fed.Reg. 37,011 (1983).
 
 
 17
 In November 1983, SCE and PG & E filed their petitions for review with this court. SCE also submitted comments to FERC. SCE objected to the lack of opportunity to comment on the new sections before the rule was promulgated, and claimed that the rule did not comply with Federal Power Act procedures. On December 15, 1983, FERC issued a subsequent order granting in part and denying in part the petitions for reconsideration. 48 Fed.Reg. 56,365 (1983). FERC reiterated that its role in reviewing the overall BPA rates was appellate in nature, while its role in reviewing nonregional rates was not clear. FERC concluded that it would resolve the question by reviewing nonregional rates either on a case-by-case basis or through subsequent rulemaking.
 
 
 18
 On December 21, 1983, the December 15th order was amended in response to SCE's comments. The revised order provided that the review hearing required under 16 U.S.C. Sec. 839e(k) would "be held in accordance with the procedures established for ratemaking by the Commission pursuant to the Federal Power Act." 18 C.F.R. Sec. 300.21(b). However, FERC concluded that it was not required to adopt every filing requirement and administrative procedure that would be followed under the Federal Power Act. 48 Fed.Reg. 56,366-67 (1983). FERC indicated that it had not yet taken a position whether its ex parte rule should apply to power marketing proceedings. Id.
 
 
 19
 SCE timely petitions for review of the final order.
 
 C. Issues
 
 20
 SCE and PG & E ask us to determine whether FERC promulgated its final rule regarding interim approval of BPA rates in accordance with the formal rulemaking procedures of the Administrative Procedure Act (APA). We must also decide whether the Regional Act requires FERC to follow all Federal Power Act ratemaking procedures when it reviews BPA nonfirm, nonregional rates. The intervenors assert that the final rule is not ripe for judicial review. Finally, we shall address FERC's consideration of review standards for nonfirm, nonregional rates.
 
 II
 Standard of Review
 
 21
 In reviewing an agency decision, we apply the standard set forth in 5 U.S.C. Sec. 706(2)(A): whether the administrative action was "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." Garrett v. Lehman, 751 F.2d 997, 999 n. 1 (9th Cir.1985). We give deference to the interpretation of a statute by the agency charged with administering it. NLRB v. Bell Aerospace Co., 416 U.S. 267, 274-75, 94 S.Ct. 1757, 1761-62, 40 L.Ed.2d 134 (1974); Markair, Inc. v. Civil Aeronautics Board, 744 F.2d 1383, 1385 (9th Cir.1984). However, the courts are the final authorities on issues of statutory construction. Federal Election Commission v. Democratic Senatorial Campaign Committee, 454 U.S. 27, 32, 102 S.Ct. 38, 42, 70 L.Ed.2d 23 (1981); Markair, 744 F.2d at 1385. We must reject administrative constructions of a statute that are inconsistent with the statutory mandate or that frustrate the policy that Congress sought to implement. Id.
 
 III
 Notice and Comment Requirements
 
 22
 5 U.S.C. Sec. 553(d) requires publication of an agency rule in the Federal Register at least 30 days before its effective date. Persons subject to the proposed rule must be given notice of and an opportunity for comment. 5 U.S.C. Sec. 553(c). However, the notice and comment requirements do not apply to "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice...." 5 U.S.C. Sec. 553(b)(3)(A).
 
 
 23
 For purposes of the APA, substantive rules are rules that create law. These rules usually implement existing law, imposing general, extrastatutory obligations pursuant to authority properly delegated by Congress. Alcaraz v. Block, 746 F.2d 593, 613 (9th Cir.1984). Interpretative rules merely clarify or explain existing law or regulations and go " 'to what the administrative officer thinks the statute or regulation means.' " Id. (quoting Gibson Wine Co. v. Snyder, 194 F.2d 329, 331 (D.C.Cir.1952) ).
 
 
 24
 FERC adopted 18 C.F.R. Sec. 300.21 in 1983. The new rule established procedures for final confirmation and approval of BPA rates and adopted review standards for rate approval. FERC concluded that because the new procedural provisions did not affect the substance of the rate proceedings, they were "clearly matters of agency organization, procedure or practice" and did not require notice and comment. 48 Fed.Reg. 37,011 (1983).
 
 
 25
 Petitioners maintain that the procedures adopted in 18 C.F.R. Sec. 300.21 dealing with intervention, requests for final confirmation and approval, and refunds for interim rates would have a substantive effect on parties to BPA final rate approval proceedings. Petitioners therefore urge us to find that FERC violated the APA by adopting the revised rule without adequate opportunity for new comment. We disagree.
 
 
 26
 Section 553(b)(3)(A) of the APA exempts "rules of agency organization, procedure, or practice" from the notice and comment requirement. In light of that express exemption, we have rejected the notion that procedural rules with a substantive impact are subject to the notice and comment requirements. Rivera v. Becerra, 714 F.2d 887, 890-91 (9th Cir.1983). The express exemption under section 553(b)(3)(A) extends to "technical regulation of the form of agency action and proceedings." Pickus v. United States Board of Parole, 507 F.2d 1107, 1113 (D.C.Cir.1974). We conclude that the rule at issue falls within that definition. As noted above, the regulations pertain to the procedural aspects of FERC's approval of BPA rates: intervention, requests for refunds for interim rates and for final confirmation and approval. Accordingly, we conclude that the promulgation of 18 C.F.R. Sec. 300.21 was not subject to the APA's notice and comment requirement.
 
 IV
 Ex Parte Communications
 
 27
 16 U.S.C. Sec. 839e(k) provides that parties to nonregional rate proceedings "shall be afforded an opportunity by the Commission for an additional hearing in accordance with the procedures established for ratemaking by the Commission pursuant to the Federal Power Act [16 U.S.C. Secs. 791a et seq.]."
 
 
 28
 16 U.S.C. Sec. 825g(b) describes the procedural rules to be applied to all Federal Power Act hearings, including ratemaking: "All hearings, investigations, and proceedings under this chapter shall be governed by the rules of practice and procedure to be adopted by the Commission." FERC's Rules of Practice and Procedure are codified at 18 C.F.R. Secs. 385.101-385.2202, and include FERC's rules regarding ex parte communications.[1] The procedures established for ratemaking to implement the Federal Power Act also include 18 C.F.R. Sec. 35.13, which requires a utility to submit its case-in-chief as part of its rate filing when it files for a rate change.
 
 
 29
 In interpreting 16 U.S.C. Sec. 839e(k), FERC stated that the statute "does not require the Commission to adopt every filing requirement and administrative procedure that the Commission would follow in a Federal Power Act proceeding." 48 Fed.Reg. 56,366. FERC concluded that it would apply its own rules prohibiting ex parte communications between parties only as it deemed "appropriate," while other procedures applicable to ratemaking under the Federal Power Act would be applied to the nonregional hearings on a case-by-case basis, including the requirement that BPA file its case-in-chief as part of its rate filing.
 
 
 30
 In support of its case-by-case approach to ex parte contacts in nonregional proceedings, FERC explains that it is difficult to apply ex parte communication restrictions to cases involving another federal agency, and that the petitioners have failed to show any prejudice to them as a result of the new rule.[2] FERC asks us to find that the differences between Federal Power Act proceedings and nonregional rate hearings preclude mechanical application of all Federal Power Act procedural rules. We disagree.[3]
 
 
 31
 FERC has cited no authority for its position that it need not apply all Federal Power Act rulemaking procedures to nonregional rate proceedings. The fact that nonregional rate proceedings differ substantively from Federal Power Act rate proceedings does not alter the statute's plain language directing FERC to apply the procedural Federal Power Act rules to nonregional rate proceedings. It is obvious that the BPA is not a utility regulated by the Federal Power Act. Undoubtedly, this was apparent to the drafters of 16 U.S.C. Sec. 839e(k). Congress must have intended to place these procedural burdens on the BPA as part of its statutory scheme to protect nonregional customers. See Central Lincoln, 735 F.2d at 1113.
 
 
 32
 We find that FERC has failed to apply the required Federal Power Act procedural rules to its final rule regarding ex parte communications and case-in-chief filing requirements. The rule as it pertains to these two procedures is therefore void.
 
 V
 Standard of Review for Nonregional Rates
 A. Ripeness
 
 33
 Intervenors Pacific Northwest Generating Company and Direct Service Industrial Customers note that at the time their petition was filed, FERC was conducting its initial proceeding to review BPA's 1981 and 1982 nonregional rates. One of the issues to be determined was the proper FERC standard of review for those rates. The intervenors argue that because the hearing had not been concluded, 18 C.F.R. Sec. 300.21(c) was not a final rule, and therefore not ripe for review. We disagree.
 
 
 34
 The doctrine of ripeness prevents courts from becoming involved in abstract questions which have not affected the parties in a concrete way. Abbott Laboratories v. Gardner, 387 U.S. 136, 148-49, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967); Pence v. Andrus, 586 F.2d 733, 737 (9th Cir.1978). In Abbott Laboratories, the Supreme Court explained that ripeness has "a twofold aspect, ... the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Abbott Laboratories, 387 U.S. at 149, 87 S.Ct. at 1515.
 
 
 35
 Challenges to agency decisions are fit for judicial review when the agency action is final and the issues involved are legal ones. Abbott Laboratories, 387 U.S. at 149, 87 S.Ct. at 1515; Pence v. Andrus, 586 F.2d at 737. Here, section 300.21(c) is a final rule promulgated and codified in the Code of Federal Regulations. FERC's rulemaking is therefore final. The question whether section 300.21(c) is inconsistent with the Regional Act is a legal one. The first leg of the Abbott Laboratories ripeness test is therefore fulfilled.
 
 
 36
 Petitioners must also show that the regulation at issue has an impact on them which "is sufficiently direct and immediate." Abbott Laboratories, 387 U.S. at 152, 87 S.Ct. at 1517. Section 300.21(c) contains guidelines for use in current nonregional rate proceedings. Because these guidelines establish the present review standard, petitioners are immediately subject to higher rates.
 
 
 37
 The revised rule is therefore ripe for judicial review.
 
 B. Validity of the Rule
 
 38
 The Regional Act requires FERC to review BPA proposed final rates under different standards for regional and nonregional rates. Regional rates are reviewed under the standards of 16 U.S.C. Sec. 839e(a)(2), which reads in pertinent part:
 
 
 39
 Rates established under this section shall become effective only ... upon confirmation and approval by the Federal Energy Regulatory Commission upon a finding by the Commission, that such rates--
 
 
 40
 (A) are sufficient to assure repayment of the Federal investment in the Federal Columbia River Power System over a reasonable number of years after first meeting the Administrator's other costs,
 
 
 41
 (B) are based upon the Administrator's total system costs, and
 
 
 42
 (C) insofar as transmission rates are concerned, equitably allocate the costs of the Federal transmission system between Federal and non-Federal power utilizing such system.
 
 
 43
 Nonfirm, nonregional rates are reviewed under 16 U.S.C. Sec. 839e(k), which provides:
 
 
 44
 Notwithstanding any other provision of this chapter, all rates or rate schedules for the sale of non-firm electric power within the United States, but outside the region, shall be established after December 5, 1980, by the Administrator in accordance with the ... Bonneville Project Act ..., the Flood Control Act of 1944, and the Federal Columbia River Transmission System Act ... [S]uch rates or rate schedules shall become effective after review by the Federal Energy Regulatory Commission for conformance with the requirements of such Acts and after approval thereof by the Commission.
 
 
 45
 In Central Lincoln, we discussed the differences between the two review standards. We observed that FERC's review of the BPA's regional rates under 16 U.S.C. Sec. 839e(a)(2) was narrow; approval was contingent only upon BPA's compliance with three specific guidelines distilled from prior statutes. Central Lincoln, 735 F.2d at 1114. With respect to nonregional rates, however, we noted that FERC was to review for overall compliance with the three statutes enumerated in Sec. 839e(k)[4] after hearings were held in accordance with FERC's ratemaking procedures established under the Federal Power Act. We concluded that Congress intended Section 839e(k) to protect interests outside the region. Id. at 1113.
 
 
 46
 Section 300.21(c) sets forth the applicable standards of review for regional and nonregional BPA rates. FERC indicated that although the provision was substantive in nature, notice and comment were not required because Section 300.21(c) codified a previous order which had set forth the review standards required by the Regional Act.[5] FERC has asked us to remand to them the question of what standard of review should be applied to nonregional rates. The request is reasonable and we therefore remand to FERC the issue of what standard of review is to be applied to BPA's nonfirm, nonregional rates.
 
 VI
 Conclusion
 
 47
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 
 [1]
 18 C.F.R. Sec. 385.2201 prohibits ex parte communications to the Commission regarding any matter pending before it in any contested on-the-record proceeding. The ex parte prohibition does not apply to a communication from "an interceder who is a local, State, or Federal agency which has no official interest in and whose official duties are not affected by the outcome of the on-the-record proceedings before the Commission to which the communication relates...." 18 C.F.R. Sec. 385.2201(b)(1). An "interceder" is defined by Sec. 385.2201(a) as "any individual outside the Commission, whether in private or public life, partnership, corporation, association or other agency, other than a party or an agent of a party, who volunteers a communication." [Emphasis added.]
 
 
 [2]
 Petitioners' claim of potential harm from ex parte contacts is not hypothetical. On October 17, 1984, counsel for SCE wrote a letter to FERC, detailing three potential ex parte contacts between BPA and FERC. One contact was a letter written to FERC by BPA's Administrator regarding the substance of BPA's 1983 rates. The rates were then being reviewed by FERC. Petitioners allege that although they were able to obtain a copy of the letter, it is not part of the record in the FERC proceedings
 SCE also learned of informal meetings between BPA and FERC during BPA's 1983 rate case. Petitioners do not know what transpired during these meetings or if other meetings occurred.
 
 
 [3]
 FERC correctly distinguishes the two proceedings. A Federal Power Act rate case is a de novo proceeding filed by an investor-owned utility (IOU), in which FERC holds an evidentiary hearing and bases its decision solely on the record compiled at that hearing. 16 U.S.C. Sec. 824d. FERC may accept, reject or modify the IOU's proposed rates. By contrast, a nonregional rate hearing is a form of appellate review, based on the record previously developed by the BPA in the administrative rate proceeding below. FERC may not modify the proposed rate; it may only confirm or reject it. Central Lincoln, 735 F.2d at 1113 n. 6; U.S. Secretary to Energy, Bonneville Power Administration, 13 F.E.R.C. p 61,157 at p. 61,339 (1980)
 
 
 [4]
 The three statutes listed in Sec. 839e(k) are the Bonneville Project Act, 16 U.S.C. Sec. 832-832l; the Flood Control Act of 1944, 16 U.S.C. 825s; and, the Federal Columbia River Transmission System Act, 16 U.S.C. Sec. 838-838k
 5 U.S. Secretary of Energy, Bonneville Power Administration, Docket Nos. EF81-2011-000 and EF81-2021-000, "Order Resolving Scope of Commission's Jurisdiction, Granting Intervention and Establishing Further Procedure," 20 F.E.R.C. p 61,292 (1982).