**JERRI'S CERAMIC ARTS, INC., Petitioner,**

Toy Manufacturers of America, Inc. (TMA), Juvenile Products Manufacturers Association, Inc. (JPMA); Childrens wear Manufacturers Association, Inc. (CMA); Russ Berrie & Company, Inc. (Russ), Intervenors,

v.

**CONSUMER PRODUCT SAFETY COMMISSION, Respondent.**

No. 88–2138.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 6, 1989.

Decided May 9, 1989.

Aaron Locker (Theodore M. Greenberg, Frederick B. Locker, Jeffrey M. Locker, Locker, Greenberg & Brainin, P.C., New York City, on brief), for petitioner.

David Alan Levitt (John R. Fleder, Director, Office of Consumer Litigation, U.S. Dept. of Justice: John R. Bolton, Asst. Atty. Gen., James V. Lacy, Gen. Counsel; Alan C. Shakin, Asst. Gen. Counsel, Consumer Products Safety Div., Washington, D.C., on brief), for respondent.

(Jon Stubenvoll, Consumer Advocate, on brief), for amicus curiae Oregon State Public Interest Research Group.

Before CHAPMAN and WILKINS, Circuit Judges, and TILLEY, United States District Judge for the Middle District of North Carolina, sitting by designation.

CHAPMAN, Circuit Judge:

This case requires a determination of whether a "Statement of Interpretation" issued by the Consumer Product Safety Commission is in fact an interpretation of an existing regulation, or is properly considered a legislative or substantive rule subject to notice and comment procedures. The "interpretation" at issue was published in May 1988, and effects a change in the Commission's enforcement policy of the "Small Parts Rule," 16 C.F.R. 1501.1–1501.5 (1988). The Rule allows the Commission to ban small toys and other children's items that present a potential health hazard. Previously, compliance officers had banned only those hard components, generally plastic, that were sufficiently small to fit into a testing cylinder. Now the Commission seeks also to prohibit components of equivalent size made of fabric. Because we believe this "interpretation" is actually a substantive amendment to the Small Parts Rule, and because the Commission did not comply with the statutory procedures of notice and comment required for such amendments, we grant appellant's petition to set the Commission's statement aside.

I

The Federal Hazardous Substances Act, 15 U.S.C. § 1261 et seq. (1982), authorizes the Commission to fashion regulations that identify and prohibit the introduction of hazardous substances into interstate commerce. Pursuant to this authority, the Commission in 1978 proposed regulations to allow the identification and exclusion of articles which pose hazards of choking, aspiration, or ingestion. The final regulations, which went into effect on January 1, 1980, apply generally to appropriately

small "toys and other articles intended for use by children under three years (36 months) of age that are introduced into interstate commerce," 16 C.F.R. § 1501.2 (1988). Whether the items are considered dangerously small is determined by placing them in a cylinder one and one-quarter inches in diameter, and one inch to two and one-quarter inches deep. The regulation further provides that "if the article fits entirely within the cylinder," it fails the test procedure. 16 C.F.R. § 1501.4(a) (1988). Further, if the article does not fit entirely within the cylinder, it will be subject to the regulations' "use and abuse" test. Any "components or pieces (excluding paper, fabric, yarn, fuzz, elastic and string)" that become detached from the article during this testing, and which then fit entirely within the cylinder, do not comply with the test. 16 C.F.R. § 1501.4(b)(2) (1988).

This dispute involves the meaning of the exclusion for "paper, fabric, yarn, fuzz, elastic, and string" provided in § 1501.4(b)(2). Between 1981 and 1987, the Commission's Compliance and Administrative Litigation staff, which had direct responsibility for enforcing the Small Parts Rule, concluded that § 1501.4(b)(2) meant that "components which become detached from an article [during use and abuse testing] and which are paper, fabric, yarn, fuzz, elastic or string are excluded from being considered small parts." "Pieces" made of the same sorts of material were also excluded from the rule. During the summer of 1987, however, Commission staff reviewed their initial determination and decided that the enumerated exclusions of § 1501.4(b)(2) actually modified only the word "pieces," and therefore that only "pieces" of goods that "might tear from the article," and not "entire components," fell outside the Small Parts Rule. Small "components" of fabric, yarn, elastic or string could therefore be banned.

In May, 1988, the Commission voted, 2–1, to concur in the staff determination and to issue an "interpretative statement," 16 C.F.R. § 1501.20, providing for the exclusion of small part components made of fabric, yarn, fuzz, elastic, or string. The state-

ment was published in the May 27, 1988 Federal Register. There, the Commission stated that, in addition to the phrasing of the regulation, the rule change was justified by remarks in the preamble to the proposed regulations, published in 1979, to the effect that "bits of fabric, yarn, paper and fuzz" were excluded from the rule because "these fibrous types of materials cannot be meaningfully tested with the truncated cylinder when they are pulled off or out of a toy." Because the Commission was by 1988 unaware of testing limitations for fabric "components" as opposed to "bits" or "pieces," it concluded that such components should not continue to be excluded from the rule. Enforcement of the new interpretation was stayed until November 23, 1989. 53 Fed.Reg. 19, 281–82 (May 27, 1988).

## II

■ As this court has previously stated, the Commission's "characterization of its statement as an exposition of its policy or interpretation of the standard does not preclude our finding that it is something more." *National Knitwear Manufacturers Association v. Consumer Products Safety Commission*, 666 F.2d 81, 83 (4th Cir.1981). Such a distinction between "interpretative" rules and "something more," i.e., "substantive" or "legislative" rules, is not always easily made. Nonetheless, courts are in general agreement that interpretative rules simply state what the administrative agency thinks the statute means, and only "remind" affected parties of existing duties. *Chula Vista City School District v. Bennett*, 824 F.2d 1573, 1582 (Fed.Cir.1987); *Southern California Edison Co. v. Federal Energy Regulatory Commission*, 770 F.2d 779, 783 (9th Cir. 1985); *General Motors Corp. v. Ruckelshaus*, 742 F.2d 1561, 1562 (D.C.1984); *Gibson Wine Co. v. Snyder*, 194 F.2d 329, 331 (D.C.Cir.1952). In contrast, a substantive or legislative rule, pursuant to properly delegated authority, has the force of law, and creates new law or imposes new rights or duties. *National Latino Media Coalition v. Federal Communications Com-*

*mission,* 816 F.2d 785, 788 (D.C.Cir.1987); *Southern California Edison,* 770 F.2d at 783; *General Motors Corp.,* 742 F.2d at 1565.

The distinction between interpretative and legislative rules is significant because 15 U.S.C. § 1262, through 5 U.S.C. § 553(b)(3)(A) (1982), the Administrative Procedure Act, exempts "interpretative rules, general statements of policy, or rules of agency organization, procedure [and] practice" from the process of notice and comment. Legislative rules which fail to satisfy such procedural requirements must be set aside. 15 U.S.C. § 1262(e)(1)–(3) (1982); 5 U.S.C. § 553(b)(3)(A) (1982); *Toy Manufacturers of America v. Consumer Products Safety Commission,* 630 F.2d 70, 75–77 (2d Cir.1980).

### III

In deciding whether proposed § 1501.20 is an interpretative rule, this court should consider the Commission's "intent in authoring it, as ascertained by an examination of the provision's language, its context, and any available extrinsic evidence." *Doe v. Hampton,* 566 F.2d 265, 280–81 (D.C.Cir.1977). Here, the language of the statement and related comments establishes that more is involved than mere "interpretation," because the proposed statement has the clear intent of eliminating a former exemption and of providing the Commission with power to enforce violations of a new rule. For example, the statement gives the Commission authority to impose the full range of civil and criminal penalties provided by Congress. The Commission specifically maintained that in "any enforcement action" based on the new interpretation, "affected parties who disagree with the action will have a full opportunity in a federal district court and/or administrative proceeding to challenge the Commission's interpretation." This is conclusive evidence that the agency believes its statement imposes new duties that have the force of law and that it can proceed to enforce those duties. Moreover, the Commission explicitly created a "stay of enforcement," a further indication that it

plans to sanction future non-compliance. For these reasons, the Commission's contention that the rule does not "command performance" is simply incredible. Its proposal that, instead, the statement "only expects" and "urges" compliance, and merely provides guidance to the public and its staff, ignores the statement's plain language that the period of mere "expectation" is limited to those months before the stay of enforcement is lifted.

The broader context of the statement also confirms that the Commission's act is an attempt at legislative rule-making. The fact that the statement altered a long-standing position cannot readily be discounted. If "interpretation" is a process of "reminding" one of existing duties, a decision to modify former duties demands close scrutiny by a reviewing court. Certainly this does not mean that an agency may never reconsider its interpretation of a regulation. But it must do so with regard to the effects of such a decision, and the greater such effects, the less likely the change can be considered merely interpretative. Here, the new rule directly impacts on an enormous range of children's products industries, including toys, apparel, furniture and furnishings, the latter of which, because of the fabric exemption, were formerly excluded from the rule. As a result, the statement would, for the first time, have the effect of bringing within the sweep of the regulation entirely new classes of business.

Because the tests distinguishing legislative and interpretative rule-making are largely concerned with intent and effect, we believe that the above facts establish that the Commission has made a legislative rule and called it an interpretation. Congress has made it clear that the promulgation of such legislative rules must be preceded by the procedural requirements elaborated at 15 U.S.C. § 1262. Because the Commission has not complied with such requirements, the interpretation by the Commission must be set aside.

SO ORDERED.